**Jenny CAROTHERS, an Incapacitated Person, Petitioner,**

v.

**DEPARTMENT OF INSTITUTIONS, GRAND JUNCTION REGIONAL CENTER, Respondent.**

**No. 91SC761.**

Supreme Court of Colorado, En Banc.

Feb. 16, 1993.

Holland & Hart, William E. Mooz, Jr., Charles Jaeger, American Civil Liberties Union, David H. Miller, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Eric R. Decator, Asst. Atty. Gen., Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Department of Institutions, Grand Junction Regional Facility v. Carothers*, 821 P.2d 891 (Colo.App.1991), the Colorado Court of Appeals affirmed the probate court's order awarding attorney fees to the petitioner, Jenny Carothers, against the Colorado Department of Institutions, Grand Junction Regional Center (the Center). The court of appeals concluded that section 15–14–303(6), 6B C.R.S. (1987), authorized the assessment of attorney fees against the Center. The court of appeals also concluded that it could not properly grant the petitioner's request for an award of attorney fees against the Center for legal services performed in connection with the Center's appeal of the probate court's order. Having granted certiorari to review this latter issue, we affirm and remand the case with directions.

I

A detailed statement of the factual and procedural history of this case is necessary to bring the narrow question here present-

ed into sharp focus. The petitioner was born prematurely on September 27, 1977. A quadriplegic, she had no mobility, no speech, and limited vision as well as other physical and cognitive limitations. She was admitted to the Center in July 1982, where she received complete medical care necessary to maintain her life until her death in October 1990.

In 1987 the petitioner's parents requested the Center to place a "No COR" (no cardio pulmonary resuscitation) order in her medical file. In effect, such order informed the Center's staff that no resuscitation efforts were to be made if the petitioner's heart failed or if she stopped breathing. Her treating physicians supported the request because they believed that any efforts to resuscitate the petitioner in the event of heart or lung failure would be futile. However, the Center denied the request on the ground that, as a treatment facility, it was obligated to provide emergency care and to treat all illnesses.

On March 13, 1989, the Center petitioned the Mesa County District Court (the probate court), pursuant to section 15–14–303, 6B C.R.S. (1987), to appoint Joyce Long, the petitioner's mother, as "guardian" for an incapacitated person.[1] The Center simultaneously filed a petition for special instructions pursuant to section 15–14–312(1)(c), 6B C.R.S. (1987), requesting the probate court to issue an order "describing the circumstance(s) if any, under which treatment should be withheld and the type of treatment withheld, or enter any order it deems appropriate to clarify the rights and responsibilities of Jenny Carothers, her guardian, and the Department of Institutions."[2] The Center indicated that it opposed the placing of a "No COR" order in the petitioner's file at the request of the petitioner's parents and absent a judicial order to that effect on the ground that the Center had a duty to treat the petitioner, pursuant to the provisions of section 27–10.5–114, 11B C.R.S. (1989).[3]

On March 30, 1989, the probate court appointed an attorney to serve as guardian ad litem for the petitioner. The guardian ad litem subsequently obtained and filed an independent evaluation of the petitioner's medical condition. The examining physician concluded that a "No COR" order was appropriate.

On June 5, 1989, the probate court conducted a hearing on the Center's petition to appoint the petitioner's parents as her guardians. The probate court expressed reservations about the propriety of such request, but, noting that the petitioner's parents had no objection to being appointed guardians of their child, granted the peti-

---

1. The petition was amended to include the petitioner's father, Ken Carothers, as co-guardian. As the probate court subsequently commented, it is not clear why the Center determined to petition the court for such appointment in view of the fact that the petitioner's parents were at all times exercising their parental responsibilities with respect to their child.

    Section 15–14–303(1) states as follows: "The incapacitated person or any person interested in his [or her] welfare may petition for a finding of incapacity and appointment of a guardian or other protective order." § 15–14–303(1), 6B C.R.S. (1987).

2. Section § 15–14–312(1)(c) states as follows:
    (c) The court shall determine the extent to which a guardian shall be permitted to give any consents or approvals that may be necessary to enable the ward to receive medical or other professional care, counsel, treatment, or service, taking into account the ward's wishes, if any, and the prevention of unnecessary or

excessive treatment. If the court at any time determines that there is any category or categories of care, counsel, treatment, or service which might not be in the best interests of the ward, the court shall require the guardian to obtain prior court approval for any such care, counsel, treatment, or service. The guardian, the ward, or any person concerned with the care, counsel, treatment, or service of the ward may petition the court at any time for instructions with regard to any such care, counsel, treatment, or service.
§ 15–14–312(1)(c), 6B C.R.S. (1987).

3. Section 27–10.5–114, 11B C.R.S. (1989), provides in general that each developmentally disabled person receiving services at a state institution shall receive appropriate dental and medical care and treatment and lists several types of treatment requiring specified procedural safeguards.

tion. The probate court also set a hearing on the Center's petition for special instructions and appointed an attorney to represent the petitioner at that hearing.

The petitioner, through her court-appointed attorney, subsequently filed a motion to dismiss the Center's petition for special instructions, asserting that no dispute existed as to the appropriateness of a "No COR" order and that the petitioner's guardians, if not her parents, were authorized to make such a decision regarding her medical treatment. The motion included a request for an award of attorney fees and costs, pursuant to section 15–14–303(6), 6B C.R.S. (1987), and sections 13–16–107 and –17–102(4), 6A C.R.S. (1987).[4] In response to the petitioner's request for attorney fees, the Center asserted that the appointment of an attorney to represent the petitioner's interests was unnecessary and that any attorney fees incurred on behalf of the petitioner should be paid from state funds appropriated for that purpose.

On September 8, 1989, after conducting an evidentiary hearing, the probate court ruled that a court order was not required to enable the Center to carry out the request of the petitioner's parents/guardians and ordered the Center to place a "No COR" order in the petitioner's file if the Center's physicians were willing to write such an order. The Center did not appeal that ruling.

The probate court conducted a separate hearing to resolve all issues relating to the petitioner's request for attorney fees. In opposing the request, the Center argued that the appointment of an attorney to represent the petitioner's interests was unnecessary because the proceedings were not adversarial and because a guardian ad litem had already been appointed; that section 13–17–102(4), 6A C.R.S. (1987), was not applicable because the action filed by the Center did not lack substantial justification; and that the Center "does not have a line item appropriation for payment of attorney fees."[5]

On February 12, 1990, the probate court entered an order awarding the petitioner the sum of $10,938.59 in attorney fees and costs jointly and severally against the Center and its counsel, the state attorney general. The probate court concluded that section 15–14–303(6), 6B C.R.S. (1987), authorized an award of attorney fees against the Center to reasonably compensate the petitioner's court-appointed attorney and that appointment of a separate attorney for purposes of litigating the issues raised by the Center's two petitions was warranted under the particular circumstances of the case. The probate court also concluded that because the Center's claims lacked substantial justification, an award of attorney fees against the Center and its attorney, jointly and severally, was further war-

4. Section 15–14–303(6), 6B C.R.S. (1987), provides in pertinent part as follows:
(6) The court shall determine a reasonable compensation and the method of payment to any court-appointed visitor, attorney, guardian ad litem, or physician....
Section 13–16–107, 6A C.R.S. (1987), provides as follows:
**Costs on motion to dismiss.** If, in any action, judgment upon motion to dismiss by either party to the action is given against the plaintiff, the defendant shall recover costs against the plaintiff; if such judgment is given for the plaintiff, he shall recover costs against the defendant.
Section 13–17–102(4), 6A C.R.S. (1987), provides in pertinent part as follows:

(4) The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment.... As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

5. Attached to the Center's trial brief is an affidavit executed by the Center's superintendent containing the statement that the Center "does not have a line item appropriation for attorney fees."

ranted by the provisions of section 13–17–102(4), 6A C.R.S. (1987).[6]

Although the Center appealed the probate court's award of attorney fees, the attorney general did not. In its notice of appeal, the Center listed four issues, asserting, *inter alia,* that the probate court abused its discretion "by awarding attorneys' fees pursuant to § 15–14–303(6), C.R.S. (1987)" and "by finding that the [Center's] Petition for Special Instructions was substantially frivolous, groundless and vexatious pursuant to § 13–17–102, C.R.S. (1987)." With respect to the contention that the probate court improperly awarded attorney fees pursuant to section 15–14–303(6), the Center argued that the appointment of a separate attorney to represent the petitioner's interests was unwarranted and, alternatively, that the award of attorney fees should be reduced. The Center did not assert that it was insulated from any award of attorney fees because it had no line-item authorization to pay attorney fees or because it was a state agency.

In her answer brief, the petitioner requested the court of appeals to award additional attorney fees pursuant to sections 15–14–303(6) and 13–17–102(4) against the Center "for the defense of the appeal." In its reply brief, the Center argued that such fees should not be awarded "because no Colorado case law exists regarding this issue" and because "the [petitioner] has not cited one Colorado case which holds that the State's actions were inappropriate." The Center again did not argue that an award of appellate attorney fees would be improper because it had no line-item authority to pay such fees or because it was a state agency.

The court of appeals announced an opinion affirming the probate court's order, concluding that section 15–14–303(6) granted the probate court authority to appoint an attorney to represent the petitioner and to enter an award of attorney fees against the Center for the costs of such legal services. Because of this conclusion, the court did not address the issue of whether the Center's action was without substantial justification within the meaning of section 13–17–102(4), 6A C.R.S. (1987). The court of appeals denied the petitioner's request for an award of appellate attorney fees on the sole ground that the Center's appeal was not frivolous.

The petitioner filed a petition for rehearing in which she noted that the court of appeals opinion as announced failed to address her alternate position that she was entitled to an award of appellate attorney fees against the Center pursuant to the same statute, § 15–14–303(6), which authorized the probate court to award attorney fees for legal services performed at trial. The court of appeals then modified its opinion by adding the following statement: "Further, we are unpersuaded that [the petitioner's] request for attorney fees pursuant to § 15–14–303(6) may properly be awarded by this court."

## II

The petitioner construes the above-quoted language of the court of appeals opinion to constitute a holding that she is not entitled to any award of appellate attorney fees. The Center argues that that language constitutes a holding that while the petitioner may be awarded attorney fees by the probate court, such fees must be paid by the probate court and cannot be assessed against the Center because the Center is a state agency and no statute expressly authorizes the assessment of attorney fees against a state agency in the circumstances of this case. In view of the

6. The probate court found that the Center's "entire argument for refusing to grant the parents'/guardians' No COR request is based on a claim that [it is] required to provide medical treatment, even if that medical treatment is inappropriate, unreasonable, and futile. Nowhere did the legislature contemplate ... that the [Center] and the [Department] should provide inappropriate care." The probate court also found that the Center's position constituted an "unnecessary impediment to the decision-making process of families, the medical profession and the patient."

posture of the case at the time the court of appeals modified its earlier opinion, we conclude that the court of appeals in effect determined that, as an appellate court, it was not in a position to grant or deny the petitioner's request for appellate attorney fees pursuant to section 15–14–303(6).

As reflected in the recitation of the procedural history of this case, the Center at no time argued before the court of appeals that attorney fees could not be awarded against it because it was a state agency. Had the court of appeals intended to resolve the petitioner's request for an award of appellate attorney fees on that basis, it in all probability would have requested arguments from both parties on that specific issue.

In this court, the Center asserts that as a state agency it cannot be subject to a court order requiring it to pay attorney fees in the absence of some express statutory authorization for such payment. The Center then argues that section 15–14–303(6) contains no such express authorization. Whatever the merits of those arguments, because they were not presented to the court of appeals, that court had no occasion to consider them. On the other hand, if we assume that the court of appeals did consider those arguments, we must conclude that they were rejected. Had it agreed with the Center's position, the court of appeals could not have concluded that the probate court's order assessing attorney fees against the Center was authorized by the terms of section 15–14–303(6). We do not accept the suggestion that the court of appeals held that the Center was liable as a state agency for the payment of attorney fees as ordered by the probate court but could not be liable because it is a state agency for any payment of any appellate attorney fees that might be assessed.[7]

■ In view of these circumstances, we construe the court of appeals opinion to convey the conclusion that as an appellate rather than a trial court it could not properly grant the petitioner's request. So construed, we agree with that conclusion. The question of whether attorney fees should ·be assessed against an unsuccessful litigant requires consideration of numerous interrelated factors and, frequently, the resolution of disputed factual issues. *See* § 13–17–103, 6A C.R.S. (1987). For example, such a request presents issues concerning the reasonableness of the sums requested for attorney fees. The task of ·weighing the appropriate factors and determining necessary fact questions is a task ill-suited for appellate adjudication. *See International Tech. Instruments, Inc. v. Engineering Measurements Co.*, 678 P.2d 558, 564 (Colo.App.1983).

In recognition of these considerations, this court has recognized the propriety of ordering a remand of a case to the trial court for a determination of a request for appellate attorney fees. *Certified Realty Corp. v. Smith*, 198 Colo. 222, 225, 597 P.2d 1043, 1046 (1979). We believe such a procedure to be appropriate here. To the extent the court of appeals failed to remand this case to the probate court for a determination of the petitioner's request for appellate attorney fees, it erred.

The court of appeals referred to two appellate decisions and to the legislative repeal of a statute authorizing the assessment of attorney fees as support for its conclusion that the petitioner's request for attorney fees could not properly be awarded by that court. *See People v. District Court*, 808 P.2d 831, 835 (Colo.1991); *People in re A.L.B.*, 683 P.2d 813, 816 (Colo. App.1984); Colo.Sess.Laws 1984, ch. 107, § 13–16–121 at 462, repealing § 13–16–121, C.R.S. (1982 Cum.Supp.). The Center has cited these authorities in support of its argument that the court of appeals held, properly, that appellate attorney fees may not be assessed against the Center pursuant to section 15–14–303(6).

7. The Center did not file a cross-petition for certiorari asserting that the court of appeals erred in concluding that the probate court was authorized pursuant to § 15–14–303(6) to enter an order assessing the petitioner's attorney fees for services rendered at trial against the Center.

We do not conclude that the references to these authorities indicates that the court of appeals ruled on an issue not presented to it. In addition, the Center's argument does not explain the court of appeals conclusion that the probate court's award of attorney fees against the Center was authorized by section 15–14–303(6). The Center has not challenged that conclusion and the necessary predicate thereto that, to the extent it did consider the Center's argument that section 15–14–303(6) does not expressly authorize the assessment of attorney fees against a state agency, the argument was rejected.

 The Center concedes that the petitioner is entitled to an award of att' 'y fees for legal services rendered on a̲ ̲al as well as for legal services rendered at trial. Under these circumstances, the Center has waived its right to argue here that appellate attorney fees may not be assessed against it because it is a state agency and section 15–14–303(6) does not contain an express authorization for such assessment.

### III

For the foregoing reasons, the judgment of the court of appeals that it may not properly grant the petitioner's request for appellate attorney fees is affirmed. However, insofar as the court of appeals opinion might in effect deny the petitioner any right to seek appellate attorney fees against the Center, we order the case remanded to the court of appeals with directions to remand the case to the probate court for determination of the petitioner's request for an award of all appropriate appellate attorney fees against the Center pursuant to section 15–14–303(6), 6B C.R.S. (1987).

VOLLACK, J., does not participate.