93 P.3d 589 (2004)
The PEOPLE of the State of Colorado through MORGAN COUNTY DEPARTMENT OF HUMAN SERVICES, Petitioner-Appellee,
In the Interest of Leo M. YEAGER, incapacitated person, Respondent-Appellant.
No. 03CA0809.
Colorado Court of Appeals, Div. I.
April 22, 2004.
*591 George N. Monsson, County Attorney, David W. Bute, Assistant County Attorney, Fort Morgan, Colorado, for Petitioner-Appellee.
Brandenburg Law Office, Dennis L. Brandenburg, Brush, Colorado, for Respondent-Appellant.
Furman Kerns and Bauer, LLC, Timothy G. Kerns, Erie, Colorado, Guardian Ad Litem.
Opinion by Judge MARQUEZ.
In this involuntary guardianship proceeding, Leo M. Yeager, an incapacitated person who died during the pendency of this appeal, through his attorney, appealed the order holding that Yeager's guardian, the Morgan County Department of Human Services (MCDHS), is a person for purposes of § 15-18.6-101, et seq., C.R.S.2003 (article 18.6), and authorizing MCDHS to execute a "do not resuscitate" (DNR) order on Yeager's behalf. We affirm.
The parties stipulated to the relevant facts. Yeager, born June 6, 1924, was without any known relatives, friends, or acquaintances and suffered from numerous medical and mental health conditions. In February 1998, the trial court appointed a visitor and a guardian ad litem (GAL) for Yeager. The following month, it determined Yeager to be legally incapacitated and appointed MCDHS to be his guardian. The order required MCDHS to involve the trial court in any extraordinary medical actions, including "no CORE [no cardiopulmonary resuscitation] or no CODE orders."
In January 2002, MCDHS filed a motion for a DNR order with respect to Yeager. The court appointed independent counsel for Yeager. Counsel, together with the parties, stipulated that Yeager suffered from advanced dementia, congestive heart failure, chronic obstructive pulmonary disease, and anemia. At hearings in August 2002 and March 2003, Yeager, his attorney, the GAL, and MCDHS representatives were all present.
The only witness at the March 2003 hearing was Yeager's personal physician. He testified as to Yeager's medical prognosis both with and without cardiopulmonary resuscitation (CPR). In addition, the trial court admitted a letter by the physician outlining his reasons for supporting the execution of a DNR order and a medical journal article discussing the ethics of CPR.
According to the physician, the likelihood of resuscitating Yeager would be approximately one out of a hundred. Even if resuscitation were successful, it was highly likely that he would be worse off after resuscitation. Resuscitation would likely cause injuries such as rib fractures and pneumothorax. His prognosis would worsen, his existing medical conditions would be exacerbated, and his life expectancy would be minimal. Yeager's *592 physician concluded that attempting resuscitation would be futile, cruel, and unethical.
Following the March 2003 hearing, the court found by clear and convincing evidence that Yeager lacked sufficient understanding or capacity to communicate responsible decisions concerning his person or to make financial or medical decisions. The court noted the physician's observations that Yeager's condition continued to deteriorate, that he had severe dementia, and that CPR was contraindicated. It found that Yeager presently had severe dementia, Alzheimer's, chronic obstructive pulmonary disease, hypothyroidism, osteoarthritis, valvular heart disease, pulmonary hypertension, stenosis, and gastroesophagial reflux disease. The court modified the original order appointing MCDHS as guardian to allow MCDHS "unlimited authority to approve and consent to medical decisions for Mr. Yeager, including but not limited to authority to enter DNR directives and orders on behalf of Mr. Yeager." That modified order is the subject of this appeal.

I. Mootness
In September 2003, during the pendency of this appeal, Yeager passed away, and Yeager's attorney continues this appeal of the same issues on Yeager's behalf. We requested briefs from the parties on whether this appeal is now moot. Both MCDHS and Yeager's attorney have responded, asserting that the appeal is not moot. We agree.
A case is moot when the relief sought, if granted, would have no practical legal effect. See State Bd. of Chiropractic Exam'rs v. Stjernholm, 935 P.2d 959 (Colo.1997); Carney v. Civil Serv. Comm'n, 30 P.3d 861 (Colo.App.2001). When issues presented in litigation become moot because of subsequent events, an appellate court will decline to render an opinion on the merits of an appeal. State Bd. of Chiropractic Exam'rs v. Stjernholm, supra; Van Schaack Holdings, Ltd. v. Fulenwider, 798 P.2d 424 (Colo.1990).
Here, both MCDHS and Yeager's attorney direct our attention to the two exceptions to the mootness doctrine: (1) the court may resolve an otherwise moot case if the matter is one that is capable of repetition yet evading review; and (2) the court may hear a moot case involving issues of great public importance or recurring constitutional violation. State Bd. of Chiropractic Exam'rs v. Stjernholm, supra; Carney v. Civil Serv. Comm'n, supra. We conclude that both exceptions apply here.
Early in this action, evidence was presented that no medical situation called for an immediate decision as to resuscitation, but that the DNR order was sought in preparation for future exigencies. Yeager's attorney, MCDHS, and the GAL all agreed at the hearing that entry of a DNR order for an incapacitated adult implicates a fundamental right.
While we recognize that situations may arise in which DNR orders are sought for incapacitated persons with longer life expectancies, future cases involving incapacitated persons with shorter life expectancies also could occur and would evade review. Further, appellate courts in this state have not addressed the issues raised here: (1) whether an independent court-appointed attorney has authority to pursue an appeal on behalf of an incapacitated person; (2) whether a county department of human services is a person under article 18.6 and has the authority to seek a DNR order; and (3) whether § 15-18.5-103(8), C.R.S.2003, limits a governmental entity's authority to seek a DNR order. We view these issues as involving matters of great public importance and conclude that the appeal is not moot.

II. Authority of Yeager's Counsel
MCDHS contends that Yeager did not give his independent court-appointed attorney authority to file an appeal and that the GAL has the sole discretion to file an appeal on Yeager's behalf. Therefore, according to MCDHS, this appeal should be dismissed. We are not persuaded.
C.R.C.P. 17(c) provides:
Whenever an ... incompetent person has a representative, such as a general guardian, conservator, or other like fiduciary, the representative may sue or defend on *593 behalf of the ... incompetent person. If ... such representative fails to act, he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an ... incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the ... incompetent person....
The court possesses broad discretion to appoint an attorney for an incapacitated person if it determines the person's rights and interests cannot otherwise be adequately protected or represented. Dep't of Insts. v. Carothers, 821 P.2d 891 (Colo.App.1991), aff'd, 845 P.2d 1179 (Colo.1993). However, the power to appoint counsel does not limit the court's power to appoint a GAL. Carothers, supra.
Here, when appointing MCDHS as guardian in 1998, the trial court found that Yeager lacked sufficient understanding or capacity to make or communicate responsible decisions concerning his person. Yeager was not represented by counsel at that time. In January 2002, after MCDHS moved for the court's permission to enter a DNR order for Yeager, the trial court appointed counsel. After the DNR order was granted, the trial court commented that the matter might be appealed, and later the court ordered that Yeager's attorney continue to serve through his appeal.
All parties acknowledge that Yeager had no family members, relatives, or acquaintances who could testify as to his wishes in regard to the DNR order; nor did Yeager indicate his wishes at any time. There is no evidence in the record that Yeager ever communicated with counsel regarding any decisions affecting his legal rights, including this appeal.
The GAL was primarily concerned with whether the proper procedures were being followed. Prior to the hearing, the GAL explained that he had struggled with whether to take a position on the DNR order. He decided that "insuring due process" for Yeager was his most appropriate function at that time.
Generally, an attorney retained to litigate an issue has no power to appeal without authorization of the client. See Tobler v. Nevitt, 45 Colo. 231, 100 P. 416 (1909). We are not aware of any Colorado authority addressing whether court-appointed counsel may pursue an appeal on behalf of an incapacitated person who cannot communicate with counsel or give counsel direction. However, we need not answer this question because, while the GAL now asserts the trial court's order should be affirmed, the GAL does not challenge the authority of Yeager's attorney to pursue this appeal. To the contrary, at oral argument the GAL stated that he would "support [Yeager's attorney's] legal right to follow up the appeal." The GAL also stated that it would be inappropriate to preclude any argument and that all positions should be argued. Thus, because the GAL supports the attorney's pursuit of the appeal, we need not decide whether the attorney could pursue this appeal without the GAL's support.
Therefore, under these circumstances, we conclude counsel has the authority to appeal these issues on Yeager's behalf. See Estate of Milstein v. Ayers, 955 P.2d 78 (Colo.App.1998)(son of incapacitated person who appealed when the GAL failed to act had third-party standing to pursue the appeal).

III. Authority of MCDHS
Yeager's attorney contends that MCDHS is not a "person" authorized by article 18.6 to execute a DNR order on behalf of an incapacitated person. We disagree.
Construction of a statute is a question of law, and the trial court's judgment is subject to independent review by the appellate court. Fogg v. Macaluso, 892 P.2d 271 (Colo.1995). When presented with an issue that involves statutory construction, our review is de novo. Ginny's Kids Int'l, Inc. v. Office of Sec'y of State, 29 P.3d 333 (Colo.App.2000).
Our primary task in construing a statute is to determine and give effect to the intent of the General Assembly. If separate clauses in the same statutory scheme may be harmonized by one construction, but would *594 be antagonistic under a different construction, courts should adopt that construction which results in harmony. Christie v. Coors Transp. Co., 933 P.2d 1330 (Colo.1997). A strained or forced construction of a statutory term is to be avoided, and we must look to the context in which a statutory term is employed. Further, we must construe the statute as a whole so as to give consistent, harmonious, and sensible effect to all its parts and, if possible, give effect to every word in the statute. Ginny's Kids Int'l, Inc. v. Office of Sec'y of State, supra.
Section 15-18.6-102, C.R.S.2003, describes the persons who may execute CPR directives:
Any adult over age eighteen who has the decisional capacity to provide informed consent to or refusal of medical treatment or any other person who is, pursuant to the laws of this state or any other state, authorized to make medical treatment decisions on behalf of an adult who lacks such decisional capacity, may execute a CPR directive.
(Emphasis added.)
For purposes of the Colorado Probate Code, a "person" is defined as "an individual or an organization." Section 15-10-201(38), C.R.S.2003. "Organization" means, among other things, a government or governmental subdivision or agency. Section 15-10-201(35), C.R.S.2003.
Article 14 of the Probate Code, which applies to guardianships, expands the definition of "person" to include a "government, governmental subdivision, agency, or instrumentality." Section 15-14-102(10), C.R.S.2003; see § 2-4-401(8), C.R.S.2003 (defining terms applicable to every statute; "person" means "any individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, limited liability company, partnership, association, or other legal entity").
Article 14 further provides that a "person" becomes a guardian for an incapacitated person upon appointment by the court. Section 15-14-301, C.R.S.2003. A guardian's duties as to an incapacitated person's health care decisions are described as follows: "Except as otherwise limited by the court, a guardian shall make decisions regarding the ward's support, care, education, health, and welfare." Section 15-14-314(1), C.R.S.2003.
Yeager's attorney concedes that MCDHS is a person who may be appointed as a guardian for purposes of article 14, but asserts that the context of article 18.6 requires a natural person to execute a CPR directive. We are not persuaded.
First, Yeager's attorney argues that article 18.6 was enacted to provide a way for individuals to declare their desires as to life-sustaining procedures before they become incompetent. While that may be true, § 15-18.6-102 anticipates that the individual might not do so before incapacity, and Yeager's attorney does not answer the question of who may make such a decision after incapacity.
Second, Yeager's attorney points out that § 15-18.6-103, C.R.S.2003, requires detailed identifying information, such as birth date, sex, and eye and hair color, concerning the subject of a CPR directive. However, this section does not speak to who may execute CPR directives. It requires the state board of health to promulgate rules and protocols to aid emergency medical service personnel in identifying persons who have executed a CPR directive. Compare § 15-18.6-103 with Dep't of Public Health & Environment Rule No. 1.1, 6 Code Colo. Regs. 1015-2 (citing § 15-18.6-103 as authority for rules pertaining to implementation of advance medical directives by emergency medical service personnel).
Third, Yeager's attorney asserts that the General Assembly could have extended the broad definitions of "person" found elsewhere to article 18.6, but chose not to do so. However, the statutes show that the opposite is true. Section 15-18.6-102 specifically entrusts execution of CPR directives to any person who has legal authority to make health care decisions on behalf of an incapacitated person, and such authority is provided by other statutes.
To conclude that MCDHS is an organization that may make health care decisions for an incapacitated person under § 15-14-301, et seq., but may not execute a CPR directive *595 under article 18.6, would be a strained interpretation that does not give effect to the words of the statute as a whole. Thus, we conclude that MCDHS, acting as a guardian, is a "person" authorized to execute a DNR order on behalf of an incapacitated person.

IV. Section 15-18.5-103(8)
Although the issue was not raised in the briefs on appeal, we asked the parties to provide supplemental briefs regarding the applicability of § 15-18.5-103(8). We now conclude that this statute does not require a contrary result.
Section 15-18.5-103(8) provides:
Except for a court acting on its own motion, no governmental entity, including the state department of human services and the county departments of social services, may petition the court as an interested person pursuant to part 3 of article 14 of this title. In addition, nothing in this article shall be construed to authorize the county director of any county department of social services, or designee of such director, to petition the court pursuant to section 26-3.1-104, C.R.S., in regard to any patient subject to the provisions of this article.
Yeager's attorney points out that articles 18.5 and 18.6 were both added to title 15 in 1992 as part of the Colorado Patient Autonomy Act. Colo. Sess. Laws 1992, ch. 264 at 1984-90. He also notes that the purpose of article 18.5 was to provide proxy medical decision-makers for incapacitated persons who have no known advance medical directives or whose wishes are not known, § 15-18.5-101(1)(b), C.R.S.2003, and the purpose of article 18.6 is to provide a method for a person to make an advance medical directive specifically to refuse cardiopulmonary resuscitation. Section 15-18.6-102. Thus, he argues that the legislature intended that the person making medical decisions be a natural person most familiar with the patient's wishes for medical treatment and that MCDHS is not an interested person. We are not persuaded.
Instead we agree with the GAL that article 18.5 provides for "interested persons" to select a designated individual to act as a proxy decision-maker for an adult patient who lacks decisional capacity. See § 15-18.5-103(4), C.R.S.2003. The term "interested person" is defined as a patient's spouse; either parent of the patient; any adult child, sibling, or grandchild of the patient; or any close friend of the patient. Section 15-18.5-103(3), C.R.S.2003. A governmental entity is not included in that definition. Thus, § 15-18.5-103(8) provides that no governmental entity, including the county department of social services, may petition the court as an interested person.
The issue presented, however, is whether article 18.5 prohibits a governmental entity, acting as a guardian, from making CPR directives under article 18.6. Thus, article 18.5 does not contain any language expanding the scope of its restrictions to other provisions of article 18 (Colorado Medical Treatment Decision Act), and similar restrictive language is not found in article 18.6. Consequently, read in concert with the other provisions of article 18 and the guardianship act, the restrictive language of article 18.5 does not evidence an intention to prohibit all decision-making by a governmental entity acting as guardian. More specifically, § 15-18.5-103(8) does not preclude a governmental entity acting as a guardian from executing a CPR directive.
We also agree with MCDHS that the legislature indicated that the prohibition against MCDHS petitioning as an "interested person" applies only to seeking guardianship solely for the purpose of proxy medical decision-making. By placing this provision only in article 18.5, the legislature impliedly provided that MCDHS could properly request to be guardian for an incapacitated individual for other valid reasons pursuant to § 15-14-301, et seq. (guardianship of incapacitated persons), and under § 26-3.1-104, C.R.S.2003 (provision of protective services for at-risk adults).
As MCDHS asserts, § 26-3.1-104 requires the department of human services to provide protective services for an incapacitated adult in need, § 26-3.1-104(1), C.R.S.2003, and urges the department to apply for guardianship for an incapacitated individual in appropriate circumstances. See § 26-3.1-104(2), *596 C.R.S.2003. Also, the restriction in § 15-18.5-103(8) is absent from article 18.6 regarding CPR. Thus, any restriction in § 15-18.5-103(8) should not prevent a guardian from making a decision under § 15-18.6-102. Any other interpretation would render § 15-18.6-102 and many of the provisions of §§ 15-14-301, et seq., and 26-3.1-101, et seq., meaningless.
In our view, construing the statutory scheme as a whole, the statutes set forth above provide authority for MCDHS to be appointed guardian and, acting in that capacity, to petition for a DNR order and to execute a CPR directive on behalf of an incapacitated person. Any other reading of § 15-18.5-103(8) would lead to the absurd result of negating the provisions of other statutes regarding guardianship.
The language of § 15-18.5-103(8) does not appear in other provisions of article 18 and provides only that no governmental entity may petition the court as an "interested person." This subsection begins by stating, "Except for a court acting on its own motion," thus indicating that the court has authority to bypass even this procedure.
One commentator has observed that the narrowed class of interested persons is an effort to encourage family communication and consensus. The commentator continues:
The restriction of guardianship proceedings to the narrower class of interested persons is problematic in light of CRS § 15-14-[304], which states that any interested person [as defined more broadly in CRS § 15-10-201 ([27])] can initiate a guardianship. The Act does not amend either of these existing Probate Code sections.
The effect of the Act on adult protective services proceedings is unclear. Section 103 of the proxy article states that "nothing in this article shall be construed to authorize" the DSS [department of social services] to file a petition pursuant to CRS § 26-3.1-104 regarding "any patient subject to this article." This language may be more gratuitous than meaningful, however, insofar as CRS § 26-3.1-104 is self-executing and by its own terms empowers the DSS to initiate adult protective proceedings for any person age eighteen or older who is at risk of mistreatment or self-neglect.
S.F. Buchanan, The Colorado Patient Autonomy Act: Opportunities and Challenges, 21 Colo. Law.1901, 1903-04 (Sept.1992).
Accordingly, we conclude that § 15-18.5-103(8) does not apply here.

V. Statutory Presumption
Yeager's attorney contends that the trial court erred by substituting its judgment for that of an incapacitated person to allow the execution of the DNR order when no evidence existed to rebut the statutory presumption of consent to resuscitation found in § 15-18.6-104(3). We disagree.

A.
First, we are not persuaded by the assertion that the presumption of § 15-18.6-104(3) applies here. That subsection states: "In the absence of a CPR directive, a person's consent to CPR shall be presumed."
Thus, the presumption arises only in the absence of a CPR directive. Here, the trial court authorized MCDHS to enter a DNR order. Therefore, if the trial court acted within the scope of its authority in doing so, the presumption is inapplicable.

B.
We also disagree that the trial court erred by substituting its judgment for that of Yeager in the absence of clear and convincing evidence of Yeager's actual wishes.
A clear and convincing standard of proof applies to the decision to authorize a DNR order under these circumstances. See Sabrosky v. Denver Dep't of Soc. Servs., 781 P.2d 106 (Colo.App.1989).
"All adult persons have a fundamental right to make their own medical treatment decisions, including decisions regarding medical treatment and artificial nourishment and hydration." Section 15-18.5-101(1)(a), C.R.S.2003. A clear and convincing standard of proof is required in cases where a fundamental right is concerned. In re A.W., 637 *597 P.2d 366 (Colo.1981); see Cruzan v. Director, 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)(upholding state requirement of clear and convincing evidence to discontinue life sustaining procedures for person in persistent vegetative state).
In § 15-18.6-102, the General Assembly specifically permits other authorized persons to execute CPR directives for incapacitated persons.
Here, MCDHS presented expert evidence to support its motion to authorize a DNR order at the March 2003 hearing. Yeager presented no evidence to rebut the motion. After specifically considering the absence of evidence as to Yeager's wishes, the trial court found that the original guardianship order should be modified to allow MCDHS unlimited authority to consent to and approve medical decisions for Yeager, including entering a DNR order.
In light of the evidence presented and in the absence of an existing medical directive or any evidence of Yeager's wishes, we conclude that the trial court did not err. Thus, MCDHS was authorized to execute the DNR order, and the statutory presumption was not applicable.

VI. Evidentiary Issues
Yeager's attorney also contends that the trial court erred by considering irrelevant evidence of the likelihood of Yeager's surviving resuscitation, Yeager's prognosis for full recovery, Yeager's probable medical condition after resuscitation, and current views of the medical ethics of resuscitation. We disagree.
A trial court has considerable discretion in ruling upon the admissibility of evidence, and we will find an abuse of discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair. Generally, evidence that logically tends to prove or disprove a fact in issue or that sheds light upon a matter contested is relevant. Evidence so remotely related to contested issues that it affords only conjectural inference should not be admitted. Wark v. McClellan, 68 P.3d 574 (Colo.App.2003).
Yeager's attorney asserts that the evidence is not relevant, and therefore is not admissible, because it does not rebut the presumption that Yeager consented to CPR. Yeager's attorney posits that the issue is not whether Yeager would have consented to CPR if he had known the facts presented in the evidence, but only whether he in fact consented before his incapacity.
However, we have already concluded that the court could authorize the guardian to enter a DNR order and that the presumption did not apply. The evidence was relevant to the trial court's determination that the guardian would "act in the ward's best interest and exercise reasonable care, diligence, and prudence." Section 15-14-314(1), C.R.S.2003.
Yeager's attorney also asserts that such evidence is unduly prejudicial because the physician's negative opinions tend to play on the emotions of the trier of fact and cloud the issue whether Yeager actually would have consented to CPR. However, he concedes that the evidence indicates what Yeager's physician would have advised him in making his decision had the physician been able to do so before Yeager's incapacity. Moreover, Yeager's attorney provides no support from the record for the assertion that the court decided this case based on emotions or other personal considerations.
Therefore, we conclude that the trial court did not abuse its discretion in admitting evidence of Yeager's prognosis or the ethics of performing CPR as concerns the best interest standard of § 15-14-314(1).
The order is affirmed.
Judge TAUBMAN and Judge WEBB concur.