259 P.3d 562 (2011)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of R.D., a Child, and
Concerning M.D., Respondent-Appellant.
No. 10CA2070.
Colorado Court of Appeals, Division A.
July 7, 2011.
*563 Ellen G. Wakeman, County Attorney, Ingrid H. Holmes, Assistant County Attorney, Golden, Colorado, for Petitioner-Appellee.
Doris A. Waters, Guardian Ad Litem.
Jenna Reulbach, P.C., Jenna Reulbach, Golden, Colorado, for Respondent-Appellant.
Opinion by Judge WEBB.
In this dependency and neglect proceeding, M.D. (mother) appeals the trial court's judgment terminating her parent-child legal relationship with R.D. (child). We conclude that mother's initial notice of appeal was ineffective for failure to comply with C.A.R. 3.4(d), and that she failed to show good cause for her untimely amended notice of appeal (which did comply). Therefore, we dismiss the appeal for lack of jurisdiction.

I. Procedural History
The child was approximately eight months old when he was removed from mother's care. Thus, this case fell under the expedited permanency planning statutes, which require placement in a permanent home no later than twelve months after his removal from the home, unless his best interests required otherwise. See §§ 19-1-102(1.6), 19-1-123, 19-3-703, C.R.S.2010; K.D. v. People, 139 P.3d 695, 699 (Colo.2006).
If mother's parental rights were to be terminated, the permanency plan was for the maternal grandparents, who had custody of the child throughout the proceedings, to adopt. Mother's parental rights were terminated in a written order dated August 30, 2010, and served on the parties by mail on September 2, 2010. Therefore, mother's notice of appeal was due on or before September 27, 2010. See C.A.R. 3.4(b)(1); C.A.R. 26(a) (when due date falls on a weekend, the period for filing ends on the next following business day); People in Interest of S.M.A.M.A., 172 P.3d 958, 960 (Colo.App. 2007) (where the parties are served by mail, three days are added to the deadline for filing the notice of appeal).
On October 8, 2010eleven days past the due datemother's counsel filed a "Notice of Appeal and Designation of Record and Motion to Accept Appeal out of Time." As good cause for the untimely filing under C.A.R. 2 and 26(b), counsel alleged that she had not heard from mother since the termination *564 hearing held on August 4, 2010, and wanted to ensure that mother desired to appeal because an appeal would delay the adoption of the child by the grandparents.
Counsel attached to the Notice of Appeal a Form 2, "Certificate of Diligent Search," as provided by C.A.R. 3.4(d). The Certificate, also filed in the trial court, stated:
 Counsel had told mother at the termination hearing that mother's signature would be needed on the notice of appeal;
 Counsel had mailed mother the written termination order, but mother did not respond;
 Counsel had called every telephone number she had for mother and found none of the numbers to be correct;
 Counsel located mother on Facebook and posted a message for mother to contact her, but mother had not done so; and
 Counsel was unable to determine mother's whereabouts or to communicate with her.
Instead of ruling on the motion to accept the untimely notice of appeal, this court ordered counsel to show cause why the appeal should not be dismissed for failure to secure mother's signature or specific authorization to appeal. After receiving no response, the appeal was dismissed on January 11, 2011.
On January 19, 2011now 114 days after the Notice of Appeal was originally due mother's counsel filed a "Motion Requesting the Court [to] Reconsider the Dismissal of the Appeal." The motion stated that counsel had not been contacted by mother until January 3, 2011, when mother inquired about the status of the appeal. However, it did not offer any explanation of why mother had failed to contact counsel sooner. Counsel attached an Amended Notice of Appeal containing mother's signature. On April 20, 2011, a motions division of this court granted the motion, noting that "an opinion shall issue in due course."
The case is now fully briefed. The guardian ad litem's response brief argues that the appeal should be dismissed for failure to timely appeal. We agree.

II. Ruling by Motions Division
Even if we assume that the notation of the motions division, "an opinion shall issue in due course," referred to the merits of the appeal, we are not bound by that ruling. See FSDW, LLC v. First Nat'l Bank, 94 P.3d 1260, 1262 (Colo.App.2004) (divisions of this court will reconsider rulings of the motions division when presented with serious questions regarding jurisdiction); Hillen v. Colorado Comp. Ins. Auth., 883 P.2d 586, 588 (Colo.App.1994) (a determination by a motions division is not binding because jurisdiction can be raised at any time during the proceedings).

III. Jurisdiction

A. Mother's October 8, 2010, Notice of Appeal
We examine the language of C.A.R. 3.4(d) to determine whether this notice was effective, and we conclude that it was not.
C.A.R. 3.4(d) sets the requirements for a notice of appeal in dependency and neglect proceedings:
The Notice of Appeal and Designation of Record (Form 1) must be prepared and signed by the appellant's trial counsel or by the appellant, if pro se. The notice must identify the party or parties initiating the appeal, specify the order or part thereof from which the appeal is taken, and set forth the date the order was reduced to writing, dated, and signed by the trial court. The notice must be signed by the appellant, if an adult, unless counsel states in the notice of appeal that the appellant has specifically authorized the filing of the appeal. If counsel is unable to file a notice of appeal because the appellant is unavailable, counsel may file a Certificate of Diligent Search (Form 2) with the clerk of the trial court.
(Emphasis added.) Thus, mother's initial notice of appeal, which lacked mother's signature or counsel's statement that mother had authorized the appeal, was noncompliant. For the following reasons, we conclude that *565 this noncompliance rendered the notice ineffective.[1]
The same rules of statutory construction apply to interpretation of rules of procedure. See People v. Gilmore, 97 P.3d 123, 128 (Colo.App.2003); Watson v. Fenney, 800 P.2d 1373, 1375 (Colo.App.1990). A court should first look to the language of the rule and afford the words their plain and ordinary meaning, but if the language is unclear, a court may look to a variety of sources to determine intent, including "the object . . . [to be] obtain[ed] by [a rule's] enactment, the circumstances under which it was adopted, and the consequences of a particular construction." See Weld Cnty. Sch. Dist. RE-12 v. Bymer, 955 P.2d 550, 554 (Colo.1998) (quoting State Eng'r v. Castle Meadows, Inc., 856 P.2d 496, 504 (Colo.1993)).
C.A.R. 3.4(d) specifies that the notice of appeal "must" be signed or at least authorized by the parent-appellant. However, if counsel "is unable to file a notice of appeal because the appellant is unavailable," counsel may file a Certificate of Diligent Search in the trial court. "Use of the word `must' connotes a requirement that is mandatory and not subject to equivocation." Silverview at Overlook, LLC v. Overlook at Mt. Crested Butte Ltd. Liab. Co., 97 P.3d 252, 255 (Colo. App.2004). The use of "unable" further indicates that counsel cannot file a notice of appeal without having obtained the parent-appellant's authorization.[2]
The minutes of meetings held by the Colorado Supreme Court's Committee on Rules of Appellate Procedure support this conclusion.[3] During initial discussion of proposed C.A.R. 3.4, the Committee noted the "necessity" of a parent's signature on the notice of appeal. Minutes of the Supreme Court Committee on Rules of Appellate Procedure Meeting July 30, 2004, at 3. At a later meeting and in response to several guests' opposition to the parental signature requirement, the Committee defended this requirement as "critical" for trial counsel to know that his or her client "actually wants to file an appeal." Minutes of the Supreme Court Committee on Rules of Appellate Procedure Meeting October 7, 2004, at 6. The Committee expressed its desire to avoid "delays caused if the client/s disappears after the hearing. This also sends a message to the client/s that they need to stay in touch with their counsel since everything is on hold until the appeal is decided." Id.
The Committee then adopted a limited exception to the signature requirement by adding the language allowing a notice to be filed without the parent's signature if counsel affirms that the parent has authorized the appeal. Id. The Committee also added the sentence in C.A.R. 3.4(d) regarding the Certificate of Diligent Search. However, this sentence does not say that the Certificate would provide a basis for filing a notice of appeal in this court. Id. The direction to file the certificate only in the trial court suggests the opposite.
Utah adopted rules for expedited appeals in juvenile cases before Colorado. See Karen M. Ashby, Implementing C.A.R. 3.4 to Expedite Appeals in Dependency and Neglect *566 Cases, 34 Colo. Law. 47, 48 n. 2 (June 2005). Its Rule 53(b) of the Rules of Appellate Procedure provides that a notice of appeal must be signed by both counsel and appellant. The rule allows for a fifteen-day extension if counsel files a certificate of diligent search. But after the additional fifteen days, the appeal will be dismissed if the appellant's signature has not been obtained. See State in Interest of T.J.D., 252 P.3d 867, 867 (Utah Ct.App.2011). Cases from other jurisdictions confirm the importance of a party's consent to an appeal in termination and other family law cases.[4] We consider these cases well reasoned and apply them here.
People ex rel. Yeager, 93 P.3d 589, 593 (Colo.App.2004), does not require a different result. There, the trial court appointed both a guardian ad litem and independent counsel to represent an incapacitated adult who was aged and near death. The attorney appealed the court's order accepting a Department of Human Services request for a "do not resuscitate" order. The division noted that, in general, "an attorney retained to litigate an issue has no power to appeal without authorization of the client." Id. However, the division allowed the appeal to proceed because the adult could not speak for himself and the guardian ad litem, who would ordinarily be empowered to authorize an appeal, did not challenge the action of court-appointed counsel. See id.
Here, in contrast, the record does not suggest any limitation on mother's ability to authorize an appeal. Cf. People in Interest of J.C.S., 169 P.3d 240, 247-48 (Colo.App. 2007) (mother's lack of actual notice did not violate due process where it was "self-inflicted" because she willfully hid from authorities and from the court). And the guardian ad litem urges dismissal.
In sum, we conclude that the language of C.A.R. 3.4(d), the minutes of the Rules of Appellate Procedure Committee, and other authorities establish that parental consent is a substantive condition precedent to a valid notice of appeal. Because mother's counsel was not empowered to file a notice of appeal without her signature or specific authorization, the October 8, 2010, notice of appeal did not invoke this court's jurisdiction, even overlooking its untimeliness.
The "substantial compliance" rationale adopted for notices of appeal under C.A.R. 3 does not persuade us otherwise. C.A.R. 3(a) provides in relevant part:
Failure of an appellant to take any step other than the timely filing of a notice of appeal in the appellate court does not affect the validity of the appeal, but is a ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal.
Cf. People v. Bost, 770 P.2d 1209, 1213 (Colo. 1989) ("If a notice of appeal has been filed within the time prescribed, only substantial compliance with the rules regarding the content of that notice is required."); Widener v. Dist. Court, 200 Colo. 398, 401, 615 P.2d 33, 34 (1980) ("If the prevailing party could not be misled as to the intention to appeal or as to the judgment from which the appeal is to be taken, any technical defect in the notice of appeal is harmless.") (emphasis added).
However, C.A.R. 3.4(d) does not contain similar language. Nor did the Rules of Appellate Procedure Committee ever mention this standard in considering and ultimately recommending adoption of C.A.R. 3.4(d) to the supreme court. Further, we cannot discern how "substantial compliance" could occur, absent the express authorization of the parent-appellant.
*567 Therefore, we conclude that mother's first notice of appeal did not invoke our jurisdiction.

B. January 19, 2011, Amended Notice of Appeal
We next consider whether mother's amended notice of appeal, which was filed 114 days past the due date, sufficed to invoke our jurisdiction. We conclude that it did not.
C.A.R. 3.4(b)(1) provides in pertinent part:
A Notice of Appeal and Designation of Record (Form 1) shall be filed with the clerk of the Court of Appeals and an advisory copy served on the clerk of the trial court within twenty-one days after the entry of the order from which the appeal is taken.
Under C.A.R. 3.4(b)(3), the time in which to file a notice of appeal "will not be extended, except upon a showing of good cause pursuant to C.A.R. 2 and C.A.R. 26(b)."
In People in Interest of A.J., 143 P.3d 1143, 1148 (Colo.App.2006), a division of this court discussed good cause for a notice of appeal filed one month late:
[T]he supreme court's purpose in adopting C.A.R. 3.4 was to mandate the prompt resolution of dependency and neglect appeals to provide children with the permanence and stability they need as expeditiously as possible. Because adherence to the timelines set forth in the rule is critical to fulfilling that purpose, the good cause extension and suspension provisions of C.A.R. 2 and 26(b) must be narrowly construed to avoid creating an exception that swallows the rule. Only exceptional cases will justify accepting a late-filed notice of appeal.
The mother had timely informed her counsel that she wanted to appeal the order of termination, but counsel decided that he needed to meet with mother before doing so. Thus, the untimely filing represented a decision of counsel not attributable to mother. Id.; cf. People v. Baker, 104 P.3d 893 (Colo.2005) (discussing good cause in the context of untimely appeals attributable to counsel's dereliction of duty); Estep v. People, 753 P.2d 1241 (Colo.1988) (same).
In Estep, counsel's dilatory conduct did not amount to excusable neglect. Nevertheless, the supreme court determined that even if an attorney's neglect is inexcusable, under C.A.R. 26(b) a reviewing court should consider whether other factors weigh heavily in favor of permitting the late filing. Such factors include "the potential prejudice the appellee may suffer from a late filing, the interests of judicial economy, and the propriety of requiring the defendant to pursue other remedies to redress his counsel's neglect." Estep, 753 P.2d at 1248.
But here, untimeliness of the Amended Notice of Appeal did not result from counsel's neglect. Counsel attached to mother's initial notice of appeal a Certificate of Diligent Search that outlined numerous attempts to contact mother and determine whether she desired to appeal. Mother's failure timely to respond to these attempts is particularly telling in light of counsel's uncontroverted assertion of having told mother at the termination hearing that mother would need to keep in contact with counsel regarding an appeal. Yet, according to the Amended Notice of Appeal, mother did not contact counsel until January 3, 2011.
Thus, because the delay in filing the January 19, 2011, Amended Notice of Appeal is solely attributable to mother, and no explanation has been presented for her conduct, we need not weigh the Estep factors to determine whether good cause has been shown. See People in Interest of M.A.M., 167 P.3d 169, 174 (Colo.App.2007) ("It is only after a determination is made that counsel's acts or omissions were inexcusable that the court turns to the EstepBaker analysis of whether other factors . . . `weigh heavily' in favor of permitting the late filing.").
Finally, we recognize mother's constitutional interest in a continued relationship with her child. See People in Interest of A.M., ___ P.3d ___, ___, 2010 WL 5621076 (Colo.App.2010) (parents have a fundamental liberty interest in the care, custody, and management of their children) (citing Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). However, that factor must be weighed against the best interests *568 of the child and the policy considerations behind the expedited procedures in C.A.R. 3.4, particularly because this case involves a child who is under the age of six. See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 31-32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (while parental termination proceedings implicate a parent's fundamental liberty interests, "child-custody litigation must be concluded as rapidly as is consistent with fairness"); see also C.S. v. People in Interest of I.S., 83 P.3d 627, 636 (Colo.2004). And while a parent's right to appeal an order of termination is significant, see A.J., 143 P.3d at 1146, "the state also has a significant interest in finalizing a dependency and neglect proceeding in an expeditious manner to meet the child's emotional and psychological needs for a permanent home." People in Interest of T.D., 140 P.3d 205, 213 (Colo.App.2006), abrogated on other grounds by People in Interest of A.J.L., 243 P.3d 244 (Colo.2010); see § 19-1-102(1.6), C.R.S.2010.
Therefore, we conclude that mother has not shown good cause under either C.A.R. 2 or C.A.R. 26(b) for the untimely filing of the Amended Notice of Appeal.

IV. Conclusion
The appeal is dismissed for lack of jurisdiction.
Chief Judge DAVIDSON and Judge NIETO concur.[*]
NOTES
[1] For this reason, we need not address whether good cause under C.A.R. 2 and C.A.R. 26(b) was shown for the untimely filing. We express no opinion whether the notice of appeal deadline under C.A.R. 3.4(b)(1) could be extended by a timely-filed motion asserting that additional time is required to locate the parent-appellant.
[2] See Karen M. Ashby, Implementing C.A.R. 3.4 to Expedite Appeals in Dependency and Neglect Cases, 34 Colo. Law. 47, 47 (June 2005) ("An appeal cannot be filed without both counsel's and appellant's signature[s] unless the appellant has specifically authorized the filing of the appeal.").
[3] See, e.g., In re Ashley E., 387 Md. 260, 874 A.2d 998, 1010 (2005) (interpreting intent behind language of court rule by reference to discussions contained in the Minutes of the Standing Committee on Rules of Practice and Procedure Meeting); Allen v. Municipality of Anchorage, 168 P.3d 890, 904 (Alaska Ct.App.2007) (referring to minutes of the Alaska Supreme Court's Appellate Rules Committee in determining intent of rule change); Nationwide Mut. Ins. Co. v. Regency Furniture, Inc., 183 Md.App. 710, 963 A.2d 253, 269 (Md.Ct.Spec.App.2009) ("If the text of [a] rule admits of more than one reasonable meaning, however, we will turn to secondary indicia of meaning such as `legislative history' (such as Rules Committee meeting minutes and Court of Appeals hearing transcripts), case law, and purpose.").
[4] See, e.g., Termination of Parent-Child Relationship of I.B. v. Indiana Dep't of Child Servs., 933 N.E.2d 1264, 1270 (Ind.2010) (if counsel is unable to locate the parent despite due diligence or cannot get clear instructions from the parent with respect to an appeal, a notice of appeal should not be filed); Brode v. Brode, 278 S.C. 457, 298 S.E.2d 443, 445 (1982) ("The ultimate election to bring an appeal is to be made by the client, not the attorney."); In re Adoption/ Guardianship of Darjal C., 191 Md.App. 505, 992 A.2d 503, 517 (Md.Ct.Spec.App.2010) (appeal dismissed where counsel filed notice of appeal without the mother's express authorization; mother's later ratification of the filing of the appeal was ineffective, as it occurred months after the expiration of the appeal period); In re Welfare of Parzino, 22 Wash.App. 88, 587 P.2d 201, 202 (1978) (court-appointed attorney could not appeal order terminating parental rights where the mother had been absent since shortly after child was born).
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2010.