In the Matter of the ESTATE OF Letty MILSTEIN, an incapacitated person,

and

John Milstein, an Interested Person, Appellants,

v.

Patricia AYERS, Guardian–Appellee.

No. 97CA1150.

Colorado Court of Appeals, Div. V.

Feb. 5, 1998.

Petrie, Bauer & Vriesman, LLP, Andrew J. Petrie, Cris D. Campbell, Denver, for Appellant Letty Milstein.

Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs, for Appellant John Milstein.

Bernard A. Poskus, P.C., Bernard A. Poskus, Darla L. Shaffer, Denver, for Guardian–Appellee Patricia Ayers.

Opinion by Judge ROTHENBERG.

In this involuntary guardianship proceeding, Letty Milstein, an allegedly incapacitated person (AIP), and John Milstein, an interested person and the AIP's son (son), appeal the comprehensive protective order entered by the probate court. We reverse and remand for a new hearing.

In April 1996, the AIP's daughter filed an involuntary petition to have a guardian and conservator appointed for the AIP. Appearing through counsel, the AIP contested the petition, but the court issued orders appointing a temporary and limited guardian and a temporary and limited conservator for the AIP.

In January 1997, the probate court issued an order that dismissed the AIP's attorney from the case and appointed a guardian ad litem (GAL) "in lieu of legal counsel."

A permanent orders hearing to resolve the issue of the AIP's incapacity was set for June 3, 1997. Several weeks before the permanent orders hearing, two attorneys claiming they had been retained by the AIP attempted to enter their appearance as her new counsel. However, shortly before the permanent orders hearing, the probate court issued several orders in which it found the AIP incompetent and lacking legal capacity to engage counsel. It therefore excluded both the AIP and her purported counsel from appearing at the permanent orders hearing. The court's orders were based largely upon an interview of the AIP conducted at the AIP's home by the probate judge on her own motion.

After the permanent orders hearing, the probate court entered an order finding the AIP incapacitated and it appointed a permanent guardian and conservator in addition to the guardian ad litem.

## I.

### Son's Appeal

The AIP's son contends that the probate court erred in excluding the AIP from the

permanent orders hearing and in denying her the right to counsel. We agree with both contentions.

## A. Standing

As a threshold matter, we address and reject the guardian's contention that the son lacks standing to raise these issues.

■■■ Because a guardianship proceeding involves a potential deprivation of fundamental rights and liberties, it implicates constitutional issues. *See Sabrosky v. Denver Department of Social Services,* 781 P.2d 106 (Colo.App.1989). Accordingly, we conclude that the concept of third party standing, as it has been applied in other cases involving alleged deprivations of constitutional rights, applies to these circumstances. *Cf. State Board for Community Colleges v. Olson,* 687 P.2d 429 (Colo.1984) (third-party standing available in action alleging violation of constitutional rights).

■■■ To have standing to assert the right of a third party not before the court, the party before the court must demonstrate an injury to himself or herself sufficient to guarantee concrete adverseness. *People v. Rosburg,* 805 P.2d 432 (Colo.1991). In addition, at least one of the following factors must be present: (1) a substantial relationship between the party before the court and the third party; (2) the difficulty or improbability that the person who has suffered deprivation of his or her rights will be able to assert it; or (3) the need to avoid dilution of the third party's rights in the event standing is not permitted. *Augustin v. Barnes,* 626 P.2d 625 (Colo.1981).

■■■ Here, the son has suffered injury in fact to himself because the probate court's order significantly abridged his ability to have contact with his mother. Further, under the Colorado Probate Code, § 15–10–101, et seq., C.R.S. 1997, the son is an interested person. *See* § 15–10–201(27), C.R.S.1997. As such, the Probate Code also provides him with other statutory rights to participate in the court's proceedings. *See* § 15–14–304(4), C.R.S. 1997 (an interested person may move to limit powers of guardian); § 15–14–307(1), C.R.S. 1997 (an interested person may peti-

tion to remove guardian); and § 15–14–307(2), C.R.S. 1997 (an interested person may petition for adjudication that ward no longer is incapacitated). Thus, the son has met the first requirement for standing.

We further conclude the son has satisfied all of the three alternative factors required for standing.

The relationship of mother and son is sufficiently substantial to meet the first of the three alternative factors. Nor can we overlook the fact that, although the AIP is a named party who normally would be able to assert her own rights, both the guardian and GAL have moved to dismiss her appeal for lack of standing, claiming that she lacks the capacity to retain her own counsel to pursue this appeal on her behalf, and that only the guardian or GAL may represent her interests. These challenges to the AIP's standing severely impair her ability to assert for herself the alleged deprivation of her rights, therefore satisfying the second alternative factor. If standing is not conferred upon the son and the AIP were denied standing to bring this appeal, the alleged deprivation of the AIP's rights would go unexamined, thus satisfying the third alternative factor.

Accordingly, we conclude that the son has standing to raise on appeal the alleged deprivation of the AIP's rights in the probate court.

## B. AIP's Right to Attend Hearing

On May 27, 1997, the probate court on its own motion and without prior notice issued an order excluding the AIP from attending the permanent orders hearing, apparently based upon its own assessment of her condition. The order stated that: "On Friday, May 23, 1997, the Court met with [the AIP] in her home and took her statement in lieu of testimony." The interview by the probate court was conducted in the presence of a court reporter, the guardian ad litem, and a medical expert, but without prior notice to all interested parties including the AIP's adult children. Hence, it was *ex parte.*

■■■ Section 15–14–303(4), C.R.S.1997, of the Probate Code provides, in pertinent part that:

The person alleged to be incapacitated *is entitled to be present at any court proceeding in person* and to see or hear all evidence bearing upon his condition. He is entitled to be present by counsel, to present evidence, [and] to cross-examine witnesses, including ... any court-appointed physician .... (emphasis added)

Thus, the statute unequivocally entitles the AIP to attend in person any court proceedings bearing upon her condition. To construe the statute as providing anything less would implicate constitutional concerns because a potential deprivation of fundamental rights and liberties is involved. *Cf. Sabrosky v. Denver Department of Social Services, supra* (because finding of incapacity deprives person of basic liberties and raises constitutional concerns, standard of proof of incapacity must be by clear and convincing evidence).

Contrary to the guardian's contention, the statute does not leave the AIP's right to attend her competency hearing to the probate court's discretion. It unambiguously entitles the AIP to attend. *Cf. In re A.W.,* 637 P.2d 366 (Colo.1981) (absent statutory direction, question of non-consensual sterilization of retarded minor is within discretion of district court). Nor have we been directed to authority suggesting that the taking of a pre-hearing statement "in lieu of testimony," assuming the taking of such a statement is otherwise proper, bars the AIP from personally attending other court proceedings bearing upon her condition.

▪ We thus conclude that the AIP was entitled to attend the permanent orders hearing and that the probate court erred in ruling otherwise. Because the AIP was excluded, the matter must be remanded for a new hearing.

In view of our conclusion that the AIP's statutory right to attend the permanent orders hearing was violated, we need not consider whether her state and federal constitutional rights also were violated.

### C. AIP's Right to Retain Counsel

The son next contends the probate court erred in refusing to allow the AIP to have her own counsel at the permanent orders hearing. We conclude she was entitled to have private counsel at all stages of the proceedings, including those determining the amount of fees and costs, if any, that should have been paid from her estate.

▪ As noted above, § 15–14–303(4) states that a person alleged to be incapacitated "is entitled to be present by counsel." A necessary inference from this express right is that the AIP has the right to retain counsel. *See also* § 15–14–303(5), C.R.S. 1997 (authorizing court to appoint counsel for allegedly incapacitated person).

Nevertheless, the guardian asserts four arguments why the probate court here was justified in denying counsel to the AIP. We reject each in turn.

### 1.

▪ The guardian maintains that because a GAL was appointed for the AIP "in lieu of legal counsel," she was not denied legal representation. We disagree.

It is undisputed that, at the outset of these proceedings in April 1996, the AIP was represented by her own counsel. However, when her physical and mental condition deteriorated in January 1997, her counsel filed a petition entitled "Protected Person's Counsel's Petition for Guidance," expressing concern regarding the AIP's ability to participate meaningfully in her representation. Her attorney requested guidance from the probate court regarding his continuing role in representing the AIP, especially as to fee matters then pending. He advised the court that there were several matters pending before it including the AIP's objections to the financial plan. The AIP contended that the financial plan authorized:

[T]he total consumption of [her] resources long before her life expectancy, thereby making her a ward of the state. . . .

Counsel also noted the AIP's objection to a request by the temporary guardian that over $50,000 be paid to that guardian for case management and attorney fees allegedly incurred during the five months between April and September, 1996.

Nowhere in his petition did counsel explicitly seek to withdraw, nor was the petition accompanied by the prerequisites to withdrawal required either by C.R.C.P. 121, § 1–1 or by C.R.P.P. 14(a). Importantly, in the petition, counsel re-affirmed the AIP's opposition to the proceedings and her desire to be represented by counsel.

On January 17, 1997, in response to counsel's submission, the probate court *sua sponte* and without a hearing or prior notice appointed a GAL "in lieu of legal counsel to represent the best interests" of the AIP. The order did not state that the AIP's counsel had resigned, nor did it find that the AIP was incapacitated at that stage of the proceeding. *See* § 15–10–403(5), C.R.S.1997 (requiring court to set out its reasons for appointing a GAL). However, by that order, the probate court effectively dismissed counsel from the case.

In a later order on May 29, 1997, which denied the AIP's request for a continuance, the court stated that "[h]er legal counsel has resigned with the approval of the court." And, again, in its comprehensive order entered June 6, 1997, the probate court recounted the history of its January 1997 order by stating that the AIP's counsel had "resigned ... with the Court's permission after [counsel] concluded ... [the AIP] lacked capacity to work with counsel." However, these findings are not supported by the record.

■ A GAL and counsel represent differing interests. Whereas the GAL acts as a special fiduciary and makes informed decisions for the AIP, counsel is an advocate for and represents the legal interests of the AIP. *See Department of Institutions v. Carothers,* 821 P.2d 891 (Colo.App.1991), *aff'd on other grounds,* 845 P.2d 1179 (Colo.1993); *see also* §§ 15–14–303(5)(a), 15–14–303(5)(b), and 15–14–303(5)(c), C.R.S.1997 (Probate Code contemplates both counsel and GAL simultaneously appearing on behalf of an AIP); *cf. People in Interest of M.M.,* 726 P.2d 1108 (Colo.1986) (discussing differing roles of counsel and GAL in parental rights termination proceeding); *compare* § 15–14–314, C.R.S.1997 (stating powers and duties of GAL) *with* Colorado Rules of Professional

Conduct Preamble and Rule 1.14 (discussing lawyer's responsibilities as zealous advocate for client under disability).

Further, the probate court's guidelines state that the GAL "is not the disabled person's attorney." Appointment Guidelines for Guardians ad Litem in the Denver Probate Court, at Roles and Responsibilities, Fifth. We also note that neither the guardian, who is a party to this action, nor the GAL, who participated by filing a motion to dismiss the AIP's appeal, were represented by counsel at the oral argument before this court.

We therefore conclude that, because a GAL and counsel represent different interests, appointment of a GAL for the AIP did not substitute for counsel. Accordingly, the probate court erred in dismissing counsel in January 1997. Insofar as the GAL asserts otherwise in her motion to dismiss, we also reject such argument.

### 2.

We similarly reject the guardian's next assertion that, because the probate court in two pre-hearing orders found the AIP incompetent and lacking legal capacity to retain counsel, it acted within its discretion in barring counsel from the permanent orders hearing.

As previously noted, on May 23, 1997, the judge on her own initiative went to the AIP's home and conducted an *ex parte* interview with the AIP. The GAL, a court-appointed psychiatric expert witness, and a court reporter were present but prior notice was not given to all interested parties.

On May 28th and May 29th, new counsel purporting to represent the AIP sought to enter their appearance on her behalf and moved for a continuance of the permanent orders hearing. The probate court issued a written order on May 29th denying the AIP's motion for a continuance stating that:

This Court has previously found and ruled that [the AIP] lacks legal capacity at the present time to employ legal counsel. Her legal counsel has resigned with the approval of the Court and a guardian-ad-litem has

been appointed by the Court to represent her interests in these proceedings.

On June 2, 1997, again without a hearing, the probate court issued another written order summarily denying new counsel permission to enter their appearance and stating that the AIP "is incompetent to engage counsel at this time and the Guardian ad Litem represents her interests in these proceedings." At the permanent orders hearing on the following day, the probate court refused to permit the attorneys who purported to represent the AIP from entering the courtroom and from attending the proceedings.

■ We have not been directed to any statutory or case law authority giving the probate court discretion to deny an AIP the right to retain private counsel. Although the Probate Code vests broad authority to appoint counsel to an unrepresented AIP, *see Department of Institutions v. Carothers, supra,* it does not confer discretion on the court to deny counsel if an AIP has chosen to be represented by counsel.

### 3.

■ In a related assertion, the guardian claims and the GAL similarly argues in her motion to dismiss, that the probate court found in its pre-hearing orders the AIP lacked the mental capacity to retain counsel.

Again, however, the findings contained in these orders were based upon the probate judge's in-home interview of the AIP which was conducted without the procedural safeguards of a hearing, prior notice, and the right to counsel afforded by the Probate Code. We also cannot determine from the pre-hearing orders whether the probate court based its findings upon clear and convincing evidence, *see Sabrosky v. Denver Department of Social Services, supra,* and there is additional confusion because the court's May 29, 1997, order refers to previous findings and rulings. Yet the record is devoid of any such prior findings or rulings.

We recognize that the probate judge was motivated to conduct such an interview by her concern for the AIP's welfare, by the AIP's deteriorated physical and mental condition, and by the court's desire to evaluate the AIP without the undue influence of third parties. Nevertheless, we are unaware of any authority in the Probate Code allowing an interview under such circumstances. *Cf. S.S. v. Wakefield,* 764 P.2d 70 (Colo.1988) (disapproving judge's *ex parte* communication with mother in dependency and neglect proceeding).

Importantly, the information obtained during the probate court's interview of the AIP related directly to the AIP's alleged incapacity, which was the ultimate issue later to be determined at the permanent orders hearing.

■ We therefore reject the contention that information obtained during the probate judges's interview with the AIP may serve as justification for denying the AIP the right to retain her own counsel.

### 4.

■ The guardian next maintains that the comprehensive protective order itself contains findings of incapacity which support the probate court's decision to exclude counsel. However, the permanent orders hearing was conducted for the purpose of determining the AIP's mental capacity, and we have concluded the AIP was entitled to attend in person and to have her counsel present. Because she was denied these rights, findings or conclusions based on the permanent orders hearing cannot stand.

For the same reason, we reject the guardian's contention that any inadequacy in the probate court's pre-hearing orders may be shored up by the evidence adduced at the permanent orders hearing.

In sum, we conclude that the AIP was entitled to have counsel represent her with respect to all proceedings commencing in April 1996 including the permanent orders hearing. On remand, she shall be entitled to have counsel appear on her behalf.

In so ruling, however, we express no opinion about which counsel should represent her in future proceedings or whether the AIP in fact retained the counsel who attempted to enter their appearance before the June 1997 hearing and who purport to represent her on

appeal. These are questions of fact for the probate court to determine on remand.

### D. Motion to Recuse Judge

The son's last assertion in his appeal is that the probate judge erred in denying his motion for recusal and that all proceedings following that motion should be set aside. However, the record reflects that the probate judge recused herself on her own motion while this appeal was pending. Accordingly, this issue is moot.

### II. AIP's Appeal

Because the same issues raised by the AIP on appeal were raised by her son and have now been resolved, we need not separately consider her contentions. Also moot is the guardian's and GAL's contention, made in their motions to dismiss, that the AIP's appeal should be dismissed because the attorneys filing on her behalf could not have been retained by the AIP due to her incapacity.

However, insofar as the guardian and the GAL also contend in their motions to dismiss that the supreme court's denial of the AIP's extraordinary writ constituted a determination of the merits of this appeal adverse to the AIP, we disagree.

Here, after entry of the probate court's June 1997 order, the attorneys purporting to represent the AIP petitioned the supreme court on her behalf for a writ of prohibition or mandamus pursuant to C.A.R. 21. The petition, which raised essentially the same issues raised on appeal, was denied by the supreme court.

The supreme court's refusal to issue a rule to show cause and to exercise original jurisdiction upon a petition for an extraordinary writ has no substantive significance. It indicates neither approval nor disapproval of the trial court ruling upon which the original proceeding is brought. *Atlantic Richfield Co. v. District Court,* 794 P.2d 253 (Colo. 1990); *People v. McGraine,* 679 P.2d 1084 (Colo.1984); *see also Allison v. Industrial Claim Appeals Office,* 884 P.2d 1113 (Colo. 1994) (denial of certiorari does not determine merits of case); *Martin v. District Court,* 191 Colo. 107, 550 P.2d 864 (1976) (denial of certiorari indicates neither approval nor disapproval of court of appeal's opinion); C.A.R. 35(f).

Hence, we conclude the guardian's and GAL's contention that denial of a C.A.R. 21 petition constitutes a decision on the merits of the issues raised on appeal is erroneous as a matter of law. *See Bell v. Simpson,* 918 P.2d 1123 (Colo.1996).

In her response to the motions to dismiss, the AIP maintains that this particular argument was frivolous and, therefore, that she is entitled to sanctions under either § 13–17–101, et seq., C.R.S.1997, or C.R.C.P. 11. Based on the authority set forth above, we agree and conclude that this aspect of the guardian's and GAL's motions to dismiss was substantially frivolous under § 13–17–102, C.R.S.1997. *See Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984) (a claim is frivolous if the proponent can present no rational argument based on the evidence or law in support of the claim).

### III.

Because we have concluded that the AIP was deprived of her right to counsel, *all orders* after January 17, 1997, either making determinations about the AIP's mental capacity or authorizing expenditures from the AIP's estate, must be set aside, and a new permanent orders hearing is required.

As to the financial expenditures, the record contains, *inter alia,* a submission entitled "Conservator's Emergency Status Report and Recommendations" filed in August 1997 in which the conservator described the financial condition of the AIP's estate at that time "at a crisis point." The report indicated that court-approved expenditures *not involving the actual support and physical care of the AIP* during the 14 months between April 1996 and August 1997 had substantially depleted the estate.

According to the report, as of August 1997, fees and costs sought or already paid included: (1) management fees of $45,705 requested by the first temporary guardian for services from April 4, 1996, to September 18, 1996, and the temporary guardian's attorney

fees of $8,710 for the same period; (2) the GAL's requested fees of $26,375 and costs of $4,868 for services from January 17, 1997, to June 8, 1997; (3) another temporary guardian's requested fees of $4,756 for services from June 3–30, 1997; (4) $850 per month for the conservator's management fees which commenced April 1996; and (5) fees of $6,376 requested by or already paid to a psychiatric expert and family dynamics experts hired at the request of the GAL. As noted, these multiple expenditures requested from the AIP's estate were *in addition to $8,700 per month* that the court had approved to provide 24-hour care for the AIP.

The conservator's report did not detail other amounts that may have been paid or still may be owed to the numerous experts who have been hired to perform physical, psychiatric, and family examinations and evaluations. Nor did it state what payments, if any, had been made to the two co-temporary guardians who were appointed on September 18, 1996, one of whom served until June 3, 1997, when a permanent guardian was appointed; the special master appointed by the court on January 15, 1997, to determine fees; the AIP's counsel who represented her from April 1996 until dismissed by the court on January 17, 1997; and other attorneys representing the multiple fiduciaries.

## IV. Conclusion

The orders of the probate court entered after January 17, 1997, are reversed to the extent that they determined the mental state of the AIP or they authorized any expenditures from the AIP's estate. On remand, the probate court shall conduct a hearing as soon as practicable and reconsider all such court orders authorizing any expenditures after January 17, 1997, including the order appointing a master.

■ To the extent the AIP's estate has already paid such court-ordered fees and costs to fiduciaries and attorneys, we further direct the probate court on remand to determine whether all or part of such fees and costs should be disgorged. It shall also con-

duct a new permanent orders hearing and such other proceedings as it deems necessary consistent with the views expressed in this opinion.

■ That portion of the motions to dismiss filed by the guardian and GAL not rendered moot by reason of the son's appeal is denied. On remand, the AIP should be reimbursed for costs and reasonable and necessary attorney fees, if any, that were actually incurred in responding to the argument by the guardian, GAL, and their attorneys which we have held to be substantially frivolous. No reimbursement from the estate shall be made to the guardian, GAL, or their attorneys for any costs or attorney's fees incurred by them in making the argument deemed frivolous.

NEY and ERICKSON,* JJ., concur.