**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

---

BEVERLY MANN, individually,

      Plaintiff-Appellant,

  v.

BRIAN D. BOATRIGHT,
individually and in his capacity as a
Jefferson County, Colorado First
Judicial District Judge; JAMES D.
ZIMMERMAN, individually and in
his capacity as a Jefferson County,
Colorado First Judicial District
Judge; FREDERIC B. RODGERS, a
Gilpin County, Colorado, County
Judge and (by special designation of
Colorado First Judicial District Chief
Judge R. Brooke Jackson) Jefferson
County, Colorado, Probate Judge, in
his capacity as Jefferson County,
Colorado First Judicial District
Probate Judge; R. BROOKE
JACKSON, in his capacity as Chief
Judge of the First Judicial District,
State of Colorado; JEFFERSON
COUNTY, COLORADO, a municipal
or county corporation; THE FIRST
JUDICIAL DISTRICT, STATE OF
COLORADO; THE STATE OF
COLORADO; MARY MUNGER,
individually and in her capacity as a
City of Lakewood, Colorado Police
Officer; JANET YOUNG,
individually and in her capacity as a
City of Lakewood, Colorado assistant
city attorney; THE CITY OF

No. 05-1559

LAKEWOOD, Colorado, a municipal corporation; TINA L. OLSEN, in her capacity as a Jefferson County, Colorado, County Judge; THOMAS E. VANCE, in his capacity as a Jefferson County, Colorado, County Judge; WILLIAM KILPATRICK, individually and in his capacity as City of Golden, Colorado Police Chief; MATT JURISCHK, individually and in his capacity as a City of Golden, Colorado Police Officer; THE CITY OF GOLDEN, Colorado, a municipal corporation; MARY LOGAN, individually, as shareholder and as administrator of Grand Oaks Care Center in Lakewood, Colorado; STEVE KUTCHER, individually and as head nurse of Grand Oaks Care Center in Lakewood, Colorado; DONALD LOGAN, individually and as assistant manager of Grand Oaks Care Center in Lakewood, Colorado; GERI-CARE, INC. d/b/a Grand Oaks Care Center, in Lakewood, Colorado; DAVID R. GLOSS, individually and as an agent of Jefferson County, Colorado, and as an agent of The State of Colorado; STEPHENIE D. LORIMER; "THE VISITOR", appointed by Judge James D. Zimmerman, pursuant to Colorado Revised Statutes 15-14-305, in his or her capacity as court-appointed "Visitor"; JOHN S. GLEASON, individually and in his capacity as Colorado Supreme Court Attorney Regulation Counsel; LOUISE CULBERSON-SMITH, individually

-2-

and in her capacity as a Colorado Supreme Court Assistant Attorney Regulation Counsel; THE COLORADO SUPREME COURT OFFICE OF ATTORNEY REGULATION COUNSEL; CARLA MARTIN, individually and in her former capacity as general manager of Golden Pond Senior Living, LLC; GOLDEN POND SENIOR LIVING, LLC, a Colorado corporation; HENRY MELTON, in his capacity as Executive Director of Golden Pond Senior Living, LLC; ENRICO GALIMBERTI, individually and in his capacity as a deputy Jefferson County Sheriff; DONALD TAIT, in his capacity as a supervising deputy Jefferson County Sheriff; TED MINK, in his capacity as Jefferson County Sheriff; GAYLE KING; TROY KING; JOAN SCHEUMANN; ERIK SCHEUMANN; EILEEN BIDWELLL. and L. JEFFREY BIDWELL,

Defendants-Appellees.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 05-cv-2413-REB-MJW)**

---

Submitted on the briefs:[*]

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of

(continued...)

-3-

Beverly Mann, pro se.

Elizabeth C. Moran, Alyson Ray Rutberg, Donald E. Lake, III, Pryor Johnson Carney Karr Nixon, P.C., Greenwood Village, Colorado for Golden Pond Senior Living, LLC, Henry Melton, and Carla Martin, Defendants-Appellees.

J. Andrew Nathan, Andrew J. Fisher, Nathan, Bremer, Dumm & Myers, P.C., Denver, Colorado for William Kilpatrick, Matt Jurischk and The City of Golden, Defendants-Appellees.

John W. Suthers, Friedrick C. Haines, Office of the Colorado Attorney General, Denver, Colorado for Brian D. Boatright, James D. Zimmerman, Frederic B. Rodgers, R. Brooke Jackson, The First Judicial District of the State of Colorado, The State of Colorado, Tina L. Olsen, Thomas E. Vance, John S. Gleason, Louise Culberson-Smith, and The Colorado Supreme Court Office of Attorney Regulation Counsel, Defendants-Appellees.

---

Before **BARRETT**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

Plaintiff-Appellant Beverly Mann appeals from the district court's sua sponte dismissal of her complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine[1]. She also challenges its order denying her request to file the complaint under seal and seeks reconsideration of orders issued by this

---

[*](...continued)
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

court while her appeal was pending. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court. We also decline to vacate any previous rulings issued by motions panels of this court during the pendency of this appeal.

I.

A. The Probate Court Orders

At the heart of this case are two Colorado probate court orders that determined that Beverly's[2] elderly father, Joseph Mann, is incapacitated and appointed defendant Gayle King as his guardian and conservator of his estate. The unfortunate circumstances surrounding the court's issuance of these orders are described in detail in Beverly's complaint. To summarize, Joseph was diagnosed with Alzheimer's disease in mid-2004. In October 2004, he left his hometown of Chicago, where he lived with Beverly, for what was to be a short trip to visit his granddaughter, King, in Golden, Colorado. While in Colorado, however, he broke his elbow and had to be hospitalized, at which point his mental health deteriorated rapidly. On November 4, 2004, after he was released from the hospital, Joseph executed a health-care power-of-attorney prepared by defendant attorney Stephenie Lorimer. This document, which is attached to the complaint, purports to revoke all prior powers-of-attorney, designates King as Joseph's

---

[2] To avoid confusion, we refer to Ms. Mann and her father, Joseph Mann, by their first names.

-5-

attorney-in-fact, and also states that King is his preferred guardian in the event that he is deemed incapacitated.

Empowered by this power-of-attorney, King placed Joseph in defendant Golden Pond Senior Living Center and obtained a temporary restraining order that prohibited Beverly from contacting him. Beverly, having traveled to Colorado, tried several times to visit Joseph at Golden Pond and even enlisted the help of the local police. Each time, however, employees of Golden Pond, on King's orders and in compliance with the restraining order, refused to let Beverly see her father. As a result, Beverly claims that she has not seen or spoken to her father since November 28, 2004, when she visited him at the Grand Oaks Nursing Home, where he lived briefly before being moved to Golden Pond.

On December 4, 2004, King filed a petition under the Colorado probate code that requested a determination that Joseph was incapacitated and sought appointment as his guardian. In a separate petition, she sought appointment as the conservator of Joseph's estate. With the court's permission, Beverly intervened in the action as an interested person and filed objections to the petitions on multiple grounds. She argued primarily that King had manipulated Joseph into signing the November 4, 2004, power-of-attorney at a time when he lacked capacity to make such decisions. She argued that the power-of-attorney was, therefore, null and void and could not operate to void any prior powers-of-attorney, including a 1998 power-of-attorney that Joseph had executed,

designating Beverly as his attorney-in-fact. Defendant state court judge Brian Boatright held a hearing on the petitions on April 19, 2005. He excused Joseph from attending the hearing based on a motion filed by Joseph's court-appointed attorney, defendant David Gloss. Beverly, however, attended the hearing, testified, and questioned witnesses.

On May 9, 2005, and May 11, 2005, Judge Boatright issued orders granting the petitions for guardianship and conservatorship, respectively. In the guardianship order, which is attached to the complaint, the court found by clear and convincing evidence that Joseph was an incapacitated person as a result of severe memory loss caused by Alzheimer's disease. With respect to the appointment of King, the court stated that it "ha[d] considered the wishes of the respondent [Joseph] concerning the selection of the guardian as filed in the visitor's report and reiterated by respondent's Court appointed attorney." R. doc. 1, attach. 5 at 1.

The guardianship order grants King broad control over Beverly's access to Joseph. It prohibits Beverly from speaking to Joseph in person or by telephone without King's consent and provides that Beverly may send letters and videotapes to Joseph, subject to pre-screening by King. It also states that any correspondence that Beverly sends "shall in no manner be disparaging towards the rest of the family, the Ward's residence in Colorado or the court proceedings granting Guardianship and Conservatorship to Mrs. King." *Id.*, attach. 5 at 2.

Although Beverly filed numerous motions in the probate court challenging the guardianship and conservatorship orders, she did not appeal the orders to the Colorado Court of Appeals.

B. The District Court Proceedings

On November 29, 2005, Beverly filed a complaint in U.S. District Court on behalf of herself and Joseph against 37 defendants. Among them is every state judge who had any involvement in the probate court proceedings; the State of Colorado and its First Judicial District; Jefferson County and its sheriff's department; the City of Lakewood, its City Attorney, and some of its police officers; the City of Golden and some of its police officers; both of the assisted-living centers that have housed Joseph; Joseph's court-appointed attorney and the statutorily-designated "visitor"; the office of Colorado's Attorney Regulation Counsel and some of its employees; King, her family, and her attorney; and Beverly's sisters and their husbands. The thrust of the lawsuit is to enjoin various orders issued by the probate court, most importantly those appointing King as guardian and conservator. The complaint also seeks "*an emergency writ of habeas corpus or other emergency writ*," R. doc. 1 at 11, requiring Joseph's production in court so that he may be told "that he has been stripped of most of his legal rights and has been made the unlimited legal ward of King," *id.* On December 14, 2005, Beverly filed a motion for a temporary restraining order also seeking enjoinment of the guardianship and conservatorship

-8-

orders and requesting that Joseph be apprised of his legal rights. The district court dismissed the complaint on its own motion on December 19, 2005, holding that the *Rooker-Feldman* doctrine barred it from reviewing orders issued in the probate court proceedings. It also held that *Rooker-Feldman* barred Beverly's claims against the individual defendants because their actions were based on the probate court's orders. The court concluded that in the absence of subject-matter jurisdiction, it could not address Beverly's request for a temporary restraining order and dismissed the case.

Paralleling all of this was Beverly's attempt to have her federal complaint sealed, or alternatively, the case file withheld from the court's web-based filing system. The district court denied her requests, holding that Beverly failed to demonstrate any basis for sealing documents filed in the case. On appeal, Beverly argues that the district court erred in applying the *Rooker-Feldman* doctrine to her claims and abused its discretion in refusing to seal her complaint.

II.

A.  Dismissal of the Complaint

We review the dismissal of a complaint for lack of subject-matter jurisdiction de novo. *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006). We may affirm the dismissal on "any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006) (quotation

omitted). Having carefully reviewed the record, we conclude that the district court lacked jurisdiction over the lion's share of Beverly's claims and properly dismissed them under the *Rooker-Feldman* doctrine. Beverly's complaint does allude to some claims distinct from her challenge to the state court's guardianship and conservatorship orders, which would not be barred by *Rooker-Feldman*. But as explained below, her attempt to state any such claims failed miserably, and thus we affirm the dismissal of the balance of her complaint for its utter disregard of the pleading requirements mandated by Federal Rule of Civil Procedure 8.

"The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 126 S.Ct. 1198, 1199 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). To Beverly this means that having lost in probate court, she cannot file a federal complaint seeking review and reversal of the unfavorable judgment. Even if the probate court's decision was wrong, that does not make its judgment void, but merely leaves it "open to reversal or modification in an appropriate and timely appellate proceeding." *Exxon-Mobil*, 544 U.S. at 284.

The Court clarified in *Exxon-Mobil* that the *Rooker-Feldman* doctrine is confined "to cases brought after the state proceedings have ended." *Guttman*, 446 F.3d at 1031 (quotation omitted). Thus, for the doctrine to apply here, the

state probate proceedings must have ended before Beverly filed her federal complaint. Beverly argues that the probate proceedings have not ended and will not end until either her father dies or the guardianship/conservatorship is terminated.

Fortunately, the Colorado Supreme Court recently addressed the question of what constitutes a final judgment of the probate court. *Scott v. Scott*, 136 P.3d 892, 894 (Colo. 2006). Although the case involved a will probate matter, we see no reason why the court's instructions should not apply equally to guardianship and protective proceedings. In *Scott*, the court held that the rules for determining whether a probate court order is final are the same rules that govern other kinds of civil cases. "[A]n order of the probate court is final if it ends the particular action in which it is entered and leaves nothing further for the court pronouncing it to do in order to completely determine the rights of the parties as to that proceeding." *Id*. at 896. It further explained that the scope of a proceeding in a probate matter is governed by the petition that initiated it. *Id*. at 896-97. "Therefore, when the probate court has fully resolved the claims a proceeding presents, the probate court has issued a final judgment." *Id*. at 896, n.7.

Under *Scott*, the scope of the probate proceeding at issue in this case was framed by the guardianship and conservatorship petitions. Therefore, once the probate court issued orders fully resolving the claims raised by the petitions, those orders constituted final judgments. *See id*. On May 9, 2005, and May 11,

-11-

2005, the probate court issued orders granting King's petitions for guardianship and conservatorship, respectively. Over Beverly's objections, the court determined that Joseph was incapacitated and appointed King as his guardian and conservator of his estate. The order appointing a conservator did refer to on-going administrative filings, but nevertheless, the claims raised in King's petitions were definitively decided and "there was nothing further for the probate court to do in order to completely determine the rights of the parties." *Id.* at 898. Thus, we conclude that the May 9, 2005, and May 11, 2005, probate court orders constituted final and appealable judgments. Since Beverly did not file a timely appeal of those judgments,[3] the district court properly considered the probate proceedings final for purposes of *Rooker-Feldman*.

We must now determine whether Beverly's federal complaint impermissibly seeks review and reversal of the probate court judgments. *See Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1143 (10th Cir. 2006) (explaining that *Rooker-Feldman* precludes cases "inviting district court review and rejection of [state-court] judgments."). On page 98 of her complaint, Beverly specifically requests a declaratory judgment nullifying various orders of the probate court, including the orders appointing King guardian and conservator.

---

[3]   Under Colorado Appellate Rule 4(a), a notice of appeal must be filed within 45 days of the date the of the entry of the judgment, decree, or order from which the party appeals.

She also seeks a declaratory judgment that Joseph was not mentally cognizant when he signed the November 4, 2004, power-of-attorney designating King as his attorney-in-fact. Beverly alleges that the governing document should have been the 1998 power-of-attorney, in which Joseph designated her as his attorney-in-fact, and the complaint requests a declaratory judgment to that effect. In addition, it seeks a "permanent enjoinment of [the probate court's] orders as violative of the First and Fourteenth Amendments." R. doc. 1 at 11. These are precisely the types of claims encompassed by the *Rooker-Feldman* doctrine, and the district court properly dismissed them. *See Bolden*, 441 F.3d at 1143 ("Appellate review – the type of judicial action barred by *Rooker-Feldman* – consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.").

In addition to injunctive relief, Beverly seeks monetary damages against a variety of government actors and private individuals for the alleged violations of her constitutional rights occasioned by their complicity with the probate court's orders. These claims too are barred by *Rooker-Feldman*. "[A] district court [can]not entertain constitutional claims attacking a state-court judgment, even if the state court [did] not pass[] directly on those claims, when the constitutional attack [is] 'inextricably intertwined' with the state court's judgment." *Exxon-Mobil*, 544 U.S. at 286, n.1. (quoting *District of Columbia v. Feldman*, 460 U.S. 462, 482, n.16 (1983)). Nearly all of Beverly's claims against the

individual defendants assert injuries based on the probate court judgments and, for her to prevail, would require the district court to review and reject those judgments. As such, her claims are inextricably intertwined with the probate court judgments and are therefore barred by the *Rooker-Feldman* doctrine.

We say "nearly" all of her claims are barred because some of the allegations in the complaint concern events that would seem to raise independent claims. Scattered throughout the complaint, for example, are vague allegations that arguably could give rise to state-law claims for defamation and conversion. Such claims, if adequately stated, would not be barred by the *Rooker-Feldman* doctrine. *See Bolden*, 441 F.3d at 1143 (explaining that federal court retains jurisdiction over independent claims, even those that deny legal conclusion reached by state court). But if Beverly does have claims beyond the doctrine's reach, we are at a loss to discern precisely what they are. Nowhere in her 99-page, single-spaced pleading could we find "a short and plain statement of the claim showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a). This alone would have been sufficient reason to dismiss the complaint. *See United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378-79 (7th Cir. 2003) (affirming dismissal for plaintiff's failure to conform complaint to pleading rules and collecting cases).

Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted.

> Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.

*McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996). In its sheer length, Beverly has made her complaint unintelligible "by scattering and concealing in a morass of irrelevancies the few allegations that matter." *Garst*, 328 F.3d at 378. And prolixity is not even the main problem. Although Beverly is a licensed attorney in the State of Illinois,[4] she has curiously eschewed the traditional pleading style characterized by a short recitation of the facts followed by claims for relief. Instead, her first and only "Claim For Relief," R. doc. 1 at 13, goes on for 463 paragraphs spanning 83 pages, and yet it neither identifies a concrete legal theory nor targets a particular defendant. She requests specific relief at the end of her pleading, but by this point not even the most attentive of readers could figure out who did what to whom. In short, it hardly matters whether the district court dismissed Beverly's complaint because it believed all of her claims were

---

[4] *See* R. doc. 1 at 7. While we generally construe pro se pleadings liberally, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the same courtesy need not be extended to licensed attorneys. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).

barred by *Rooker-Feldman* or simply because it could not separate the wheat from the chaff. It was not the district court's job to stitch together cognizable claims for relief from the wholly deficient pleading that Beverly filed. As we have frequently noted, we are loath to reverse a district court for refusing to do the litigant's job. *See, e.g., Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1199 (10th Cir. 2000) (affirming grant of summary judgment where non-movant submitted inadequate response); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1513-14 (10th Cir. 1990) (deferring to district court's ruling on jury instructions).

B. Order Denying Motions to Seal Complaint

Along with her complaint, Beverly filed two motions in the district court seeking to seal the complaint and other documents filed in the case or to proceed under a pseudonym. *See* R. docs. 2,3. As an alternative, she requested that documents filed in the case not be placed on PACER, the court's internet filing website. In support of her motion, Beverly argued that because she has been denied access to Joseph, she was not able to speak to him prior to filing the lawsuit. She maintained, however, that he would be "profoundly embarrassed" if the details related in the complaint were to become publicly available. *Id.* doc. 3 at 3. And she argued that releasing the complaint to the public would "constitute[] a profound invasion of her own privacy." *Id.* A magistrate judge denied both motions, holding that Beverly failed to demonstrate any basis for sealing documents filed in the case. Beverly appealed the decision to the district

court judge, who upheld it by order dated December 16, 2005, concluding that the magistrate's decision was not contrary to law.

Whether judicial records and other case-related information should be sealed or otherwise withheld from the public is a matter left to the sound discretion of the district court. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Accordingly, we will not disturb the district court's decision to keep the case file public unless we have a "definite and firm conviction that [it] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quotation omitted). Beverly fails to convince us under this standard that the district court abused its discretion in denying the relief requested in her motions.

Courts have long recognized a common-law right of access to judicial records. *Nixon*, 435 U.S. at 597; *Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508, 1511 (10th Cir. 1994). This right, however, is not absolute. The "presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.* We agree with the district court that Beverly failed to demonstrate a basis for sealing the complaint or other documents in the case. The complaint contains a detailed history of Beverly's on-going feud with her family

and discloses that Joseph has been diagnosed with Alzheimer's disease. We are not convinced, however, that Beverly's privacy concern with respect to this information is sufficiently critical to outweigh the strong presumption in favor of public access to judicial records. *Cf. James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993) (holding that plaintiffs should have been permitted to use pseudonyms so as to prevent their children from learning the true identity of their biological father). We also note that much of the information contained in Beverly's complaint appears to have been disclosed previously in the public probate court proceedings, further undermining her privacy concerns.

C. Motions Panel Rulings

Finally, Beverly asks us to reconsider the following two orders issued by motions panels of this court during the pendency of her appeal: (1) a February 6, 2006, order holding that she is not legally authorized to act for Joseph and dismissing him from the appeal; and (2) a March 30, 2006, order imposing sanctions on Beverly for filing frivolous motions and unnecessarily burdening this court.

Motions panel decisions are tentative and subject to reexamination by the merits panel. *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1544 (10th Cir. 1996). With respect to the first order, Beverly argues that under Colorado law, she has standing to pursue claims on behalf of her father, and therefore, the motions panel committed error in dismissing him from the appeal.

-18-

In support, she cites *In re Estate of Milstein v. Ayers*, 955 P.2d 78, 81 (Colo. Ct. App. 1998), a case in which the court permitted a son to bring claims on behalf of his incapacitated mother over the objections of her guardian. In *Ayers*, the court held that "[b]ecause a guardianship proceeding involves a potential deprivation of fundamental rights and liberties, it implicates constitutional issues." *Id.* at 81. Therefore, it held that the concept of third-party standing applied to guardianship proceedings. *Id.*

We agree with Beverly that under *Ayers*, she has standing to pursue claims on behalf of her father involving alleged deprivations of his constitutional rights. Neither *Ayers* nor any other case that she cites, however, sanctions the practice of asserting such claims pro se.[5] As the motions panel held in its February 6, 2006, order, under this court's precedent, even if Beverly were Joseph's legal guardian, she would not be able to bring suit on his behalf without the assistance of

---

[5] Contrary to Beverly's argument, her case is not sufficiently analogous to *Winkelman v. Parma City School District*, No. 04-4159, currently pending in the Sixth Circuit, to justify her repeated attempts to set aside this court's February 6, 2006, order. *Winkelman* involves the narrow question of whether parents may prosecute claims pro se on behalf of their minor children under the Individuals with Disabilities Education Act ("IDEA"). The Supreme Court's grant of a stay in that case pending disposition of the Winkelmans's petition for certiorari is of no relevance here. Joseph is not Beverly's minor child, she is not his legal guardian, and she admittedly does not know what his wishes are with respect to the prosecution of this appeal. *Winkelman* and other IDEA cases involving pro se parental representation of minor children are simply inapposite.

counsel. *See Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (holding that father did not have right to represent minor daughters pro se).

> It goes without saying that it is not in the interests of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected.

*Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990). As the *Cheung* court noted, to allow guardians to bring pro se litigation also invites abuse, as the present case may demonstrate. Although Beverly claims to be a licensed attorney, she is not licensed in the State of Colorado and she has neither sought nor been granted permission to practice before this court. Accordingly, she has no right to prosecute this appeal on Joseph's behalf, and the motions panel correctly dismissed him from the appeal.

In the March 30, 2006, order, the motions panel sanctioned Beverly in the amount of $500 for filing frivolous motions seeking unwarranted relief. *See* 10th Cir. R. 46.5(B)(2). Within three months of her appeal being docketed, Beverly filed between five and seven motions, depending on how you count them, seeking everything from an emergency writ of mandamus on Joseph's behalf to an order requiring the clerk of this court to serve her via email. A motions panel denied the motions and warned Beverly that repeated violations of 10th Cir. R. 46.5 would potentially lead to sanctions. On March 7, 2006, after Beverly twice sought reconsideration of a decided issue, she was ordered to show cause

why sanctions should not be imposed. The motions panel ordered the sanctions upon receiving Beverly's response.

This court has the inherent power to impose sanctions that are necessary to regulate its docket, promote judicial efficiency, and deter frivolous filings. *Christensen v. Ward*, 916 F.2d 1462, 1469 (10th Cir. 1990). Beverly's repeated frivolous motions have caused this court to expend valuable time and resources that could have been better spent addressing meritorious arguments advanced by rule-abiding litigants. We therefore uphold the March 30, 2006, order. We further ORDER that Beverly shall not be permitted to pursue additional appeals in this court until she provides adequate proof that she has complied with the sanctions imposed in this case. *Christensen v. Ward*, 916 F.2d 1485, 1485 (10th Cir. 1990)

The judgment of the district court is AFFIRMED. Beverly's request to vacate the orders of February 6, 2006, and March 30, 2006, is DENIED, and all other pending motions are DENIED as moot.