**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JANICE D. GREEN, as guardian of
Gladys I. Green,

      Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellee.

No. 10-5133
(D.C. No. 4:10-CV-00080-CVE-FHM)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, **BRORBY**, Senior
Circuit Judge.

---

This case concerns a suit filed by Gladys I. Green (Ms. Green), to obtain a

refund of taxes paid on the estate of her late husband, Robert C. Green.

Ms. Green, appearing pro se as she did in the district court,[1] appeals the court's

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     We question whether Janice D. Green, the daughter and guardian of Gladys
I. Green, can appear pro se when acting as her mother's guardian. *See Meeker v.*
(continued...)

order that dismissed the complaint on the ground that she lacked standing. We affirm the court's order, but on different grounds.

Background

Robert C. Green died in 1980. His wife, Ms. Green, was the sole beneficiary of his estate. Robert G. Green, their son, was appointed administrator of the estate for the probate proceedings. In 1982, the estate filed a tax return in which it reported owing $75,798 in taxes. In 1985, the Internal Revenue Service (IRS) assessed additional taxes of $83,422. When the estate failed to pay the outstanding taxes, the IRS in 1988 filed a collection action in federal court which it sought to reduce to judgment the assessments, statutory interest, and penalties. Robert G. Green confessed judgment for the taxes, interest, and penalties, and in 1989, the district court entered judgment in favor of the government in the amount of $480,588.

In 1989, the IRS filed its judgment against the estate in the probate court. Several years later, the court removed Robert C. Green as administrator and appointed a new administrator. Then in July 1996, the court entered a final decree, which among other things, distributed the estate's assets. After the

---

[1](...continued)
*Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam) (holding that a parent may appear pro se when acting on his own behalf, but he or she must be represented by a lawyer when acting as his child's guardian). The parties have not raised the issue and we need not decide it because the district court lacked jurisdiction in any event.

administrator and attorney fees were paid, the estate had $713,292 in assets, which the court ordered be paid to the government in satisfaction of its judgment for taxes, interest, and penalties. It is undisputed that Ms. Green received notices of the filings and actions taken by the court during the pendency of the probate proceedings.

Four years later, in 2000, Ms. Green submitted a request to the IRS under the Freedom of Information Act (FOIA) for documents concerning its efforts to collect taxes from the estate. The IRS responded by producing more than 2,300 pages of documents. In 2002, Ms. Green filed a federal court suit against the government in which she asserted claims under 26 U.S.C. §§ 7426 (wrongful levy), 7431 (unauthorized disclosure), 7432 (failure to release lien), and 7433 (unauthorized collection activity). The complaint also contained a *Bivens* claim[2] in which Ms. Green alleged the IRS seized her property in violation of the Fourth Amendment. Following the district court's dismissal of the complaint, Ms. Green filed an amended complaint, which she later voluntarily dismissed.

In the fall of 2005, Ms. Green, through her daughter and guardian Janice D. Green, filed a new suit against the government in which she again asserted claims under § 7426 (wrongful levy) and *Bivens*. The district court found that the statute

---

[2]  *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

of limitations barred the wrongful levy claim and entered judgment in favor of the United States.

Ms. Green, again through her guardian, filed another federal-court suit in 2007, in which she sought for the first time a refund of the taxes, interest, and penalties collected from the estate under 26 U.S.C. § 7422. The district court identified the "key issue" raised by the government's motion to dismiss was whether Ms. Green had "filed a timely administrative claim." *Green v. United States*, No. 07-CV-0231, 2008 WL 508675, at *4 (N.D. Okla. Feb. 22, 2008). In her response to the motion to dismiss, Ms. Green argued that she sent a protest letter to the IRS on April 17, 1996, and never received a response. But Ms. Green failed to produce a copy of the letter to allow the court to evaluate whether the letter could be read to constitute a claim, and the court dismissed the complaint without prejudice.

In February 2010, Ms. Green, again through her guardian, filed this suit in which she sought a refund under § 7422 of the taxes, interest, and penalties collected from the estate in 1996. To bolster her claim that she had timely filed an informal administrative claim, she attached three documents that were not part of her pleadings in her 2007 refund suit: (1) an April 8, 1996 letter from her to then United States Senator Don Nickles in which she asked for his help in stopping the proposed sale of estate assets; (2) an April 28, 1996 letter from Janice D. Green to a regional commissioner of the IRS in which she outlined her

belief that a piece of proposed Congressional legislation "could help my mother and other taxpayers in similar situations," R., Vol. 1 at 25, asked him to stop the proposed sale of estate assets, and explained that an oil industry bust in Oklahoma at the time of her father's death caused the estate to be overvalued; and (3) a July 18, 2002 letter from Janice D. Green to the district director of the IRS, which said it was an "administrative claim," *id*. at 41, under §§ 7433 (unauthorized collection activity), 7432 (failure to release lien), and 7431 (unauthorized disclosure).

In its motion to dismiss, the government argued, among other things, that Ms. Green lacked standing, her suit was barred by the doctrines of claim and issue preclusion, and the complaint failed to state a claim under § 7422. In her response, Ms. Green argued that she had standing, and regarding the merits, contended that she had filed an informal refund claim within two years from the time the tax was paid, and the claim was perfected when the formal refund claim was filed on July 18, 2002. The district court granted the motion on the ground Ms. Green lacked standing because the tax was paid by the estate. This appeal followed.

<u>Analysis</u>

The government concedes that the district court's conclusion that Ms. Green lacked standing might be incorrect, Aplee. Answer Br. at 13, n.3, but

urges that the order should be affirmed on alternate grounds.[3]  "We may affirm

the dismissal on any grounds for which there is a record sufficient to permit

conclusions of law, even grounds not relied upon by the district court."  *Mann v.*

*Boatright*, 477 F.3d 1140, 1145 (10th Cir. 2007) (quotation omitted).

Under 28 U.S.C. § 1346(a)(1), the United States has consented to be sued

in federal district court in civil actions "for the recovery of any internal-revenue

tax alleged to have been erroneously or illegally assessed or collected."

However, a party bringing such an action must exhaust his administrative

remedies by filing a timely and proper refund claim prior to filing suit.  Section

7422(a) provides: "No suit or proceeding shall be maintained in any court for the

recovery of any internal revenue tax alleged to have been erroneously or illegally

assessed or collected . . .  until a claim for refund . . .  has been duly filed with

the Secretary, according to .  . . law . . . and the [Secretary's] regulations."

As to the time for filing a refund claim, 26 U.S.C. § 6511(a) provides:

"Claim for [a] refund of an overpayment of any tax . . . shall be filed by the

taxpayer within 3 years from the time the return was filed or 2 years from the

---

[3]      We acknowledge that standing is a jurisdictional issue, and should be
addressed prior to considering the merits of a case.  However, the timely filing of
a refund claim is also a jurisdictional prerequisite to filing a suit for a refund
under 26 U.S.C. § 7422.  *Graham v. United States (In re Graham)*, 981 F.2d
1135, 1138 (10th Cir. 1992).  Under such circumstances, we can choose which
jurisdictional grounds to address in resolving a case.  *See Sinochem Int'l Co. v.
Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (recognizing that "a
federal court has leeway to choose among threshold grounds for denying audience
to a case on the merits") (quotation omitted).

time the tax was paid, whichever of such periods expires the later." 26 C.F.R.

§ 301.6402-2 specifies what should be included in a claim and to whom it should

be sent. Included in the regulation is the requirement that the taxpayer must file

the claim with the service center serving the internal revenue district in which the

tax was paid. § 301.6402-2(a)(2).

On the basis of the Supreme Court's decision in *United States v. Dalm*,

494 U.S. 596, 602 (1990), which held that there are no equitable exceptions to the

requirement for timely filing under § 6511, we have explained that "the

government does not waive sovereign immunity in a suit for a tax refund until

presented with an administrative claim which it has either denied or ignored."

*Graham v. United States (In re Graham)*, 981 F.2d 1135, 1138 (10th Cir. 1992).

Moreover, "[t]he administrative claim itself must be filed within the later of two

years *after* the tax was paid or three years after the return was filed. *These rules*

*are nonwaivable jurisdictional requirements.*" *Id.* (citation omitted, emphasis

added). *See also Angle v. United States*, 996 F.2d 252, 253 (10th Cir. 1993)

(holding that "[f]iling a timely tax refund claim with the IRS is a jurisdictional

prerequisite to maintaining a tax refund suit").[4]

---

[4] Title 26 U.S.C. § 6532(a)(1) governs the time in which a taxpayer must file suit once a refund claim has been disallowed. Section 6532(a)(2) specifically allows the Secretary to extend the two-year period for filing suit. However, we are not concerned with the timeliness of Ms. Green's suit, but instead the failure to file a timely refund claim under § 6511(a), which is jurisdictional and cannot be waived.

We need not resolve whether the April 1996 letters constituted an informal claim. Regardless of the content of the letters and to whom they were sent, they were untimely under § 6511(a), a requirement that cannot be waived. *Graham*, 981 F.2d at 1138. Two of the letters were sent in April 1996, several months before the taxes were paid, in July 1996. Indeed, Ms. Green concedes that the April 2006 letters are untimely and cannot suffice as claims because they pre-date payment of the taxes. *See* Aplt. Reply Br. at 4, 12.

Still, Ms. Green argues that several other letters attached as exhibits to her complaint stand as informal refund claims that were made during the two years allowed under § 6511(a) in which to file a refund claim.[5] She further argues that these informal claims were perfected on July 18, 2002, when an administrative claim letter was sent to the IRS.

> The United States Supreme Court has held
>
> that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.

*United States v. Kales*, 314 U.S. 186, 194 (1941). But to constitute an informal claim, it must "fairly advis[e] the Commissioner of the nature of the taxpayer's claim." *Id. See also Kaffenberger v. United States*, 314 F.3d 944, 954 (8th Cir.

---

[5] We construe Ms. Green's pro se filings liberally. *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

2003) (holding that an informal claim must "put[] the IRS on notice that a claim is being made").

On July 22, 1996, the estate paid taxes in the amount of $713,292. From this day forward, the estate had two years in which to submit a refund claim to the IRS, be it formal or informal. Ms. Green admits that no formal claim was filed until July 18, 2002. As such, we turn to the exhibits cited by Ms. Green that she contends constituted an informal claim. An examination of each exhibit leads us to conclude they did not put the IRS on notice that a claim was being made.

In April 1997, an IRS case worker wrote to Janice D. Green as follows: "This letter is to acknowledge receipt of your letter to Senator Bob Kerrey and Representative Rob Portman, *Co-Chairmen of the National Commission on Restructuring the Internal Revenue Service*." R., Vol. 1 at 28 (emphasis added). But there is no copy of the letter to Senator Kerrey and Representative Portman in the record.

On July 1, 1997, Janice D. Green wrote to a taxpayer advocate requesting an investigation and review of her "mother's situation regarding the taxes on my father's estate," *id*. at 30, in which she complained about issues of hardship, fairness and alleged ethical violations on the part of the administrator. The word claim or refund was never mentioned. More to the point, Ms. Green has not cited any authority, nor have we uncovered any, to support the notion that a letter to a taxpayer advocate puts the IRS on notice of a refund claim.

On October 21, 1997, K.J. Sawyer, a district director of the IRS wrote to Senator Don Nickles a letter in response to an inquiry by Mr. Nickles "on behalf of your constituent, Ms. Janice Green." *Id*. at 33. He also wrote: "Our office has assured Ms. Green her concerns have been referred to Legislative Affairs in Washington, D.C., for consideration of future tax law changes and to Inspection for consideration of allegations of ethical misconduct." *Id*. Again, we do not have a copy of Senator Nickles's letter, but we are unaware of any authority to support the argument that a United States Senator can make a refund claim on behalf of his constituent, or more to the point, that the IRS was on notice that a refund claim was being made.

On April 21, 1998, Richard M. Creamer, a project manager for the IRS, wrote to Janice D. Green, acknowledging receipt of her "October 3, 1997 correspondence to the Senate Finance Committee in which you expressed concern over an unresolved tax problem." *Id*. at 35. In her reply brief, Ms. Green writes that Mr. Creamer was "the head of the special IRS office set up at the time of the 1997 – 1998 Senate Finance Committee hearings *on IRS taxpayer abuse*. This office was established to audit and investigate some of the cases that had come to the attention of the Senate Finance Committee." Aplt. Reply Br. at 5 (emphasis added). There is no suggestion in Mr. Creamer's letter that Ms. Green had filed a refund claim or that the IRS or Senate Finance Committee were investigating a refund.

According to Ms. Green, Elizabeth Johnson was an auditor "performing a second audit of the Estate *at the request of the Washington DC office* overseeing *the [Senate Finance Committee] cases*." *Id*. at 6 (emphasis added). She argues that Ms. Johnson made a computer entry on December 3, 1998, that established the IRS was on notice of the estate's refund claim. To the contrary, Ms. Johnson appeared to question whether any of Ms. Green's letters to the Senate Finance Committee constituted a refund claim. In apparent recognition that she never received a denial letter from the IRS, the Senate Finance Committee, or any other person or entity, Ms. Green argues without record support that an attorney told Ms. Johnson that "she did not need to deny the refund claim." *Id*. at 7.

"If the Commissioner chooses not to stand on his own formal or detailed requirements, it would be making an empty abstraction, and not a practical safeguard, of a regulation to allow the Commissioner to invoke technical objections after he has investigated the merits of a claim and taken action upon it." *Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 297 (1945). However, "[i]t is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute." *Id*. To that end, "[t]he evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission." *Id*. at 297-98.

None of the exhibits cited by Ms. Green demonstrate that the IRS knew that a refund claim was being made. Further, there is no investigation or action taken by the IRS in response to a refund claim. And because there was no informal claim filed within the IRS within the statutory period, the administrative claim letter sent to the IRS on July 18, 2002, was untimely.

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge